764 P.2d 1146

**Jack CROWN and Claudia Crown, husband and wife, Plaintiffs/Appellants,**

v.

**Claude RAYMOND and Jacqueline Raymond, husband and wife, and each of them, individually and doing business as C & J Arms, Defendants/Appellees.**

No. 2 CA–CV 87–0307.

Court of Appeals of Arizona,
Division 2, Department B.

June 16, 1988.

Reconsideration Denied Aug. 2, 1988.

Petition and Cross–Petition for Review
Denied Nov. 29, 1988.*

Robert Q. Hoyt, P.C., by Gerald T. Barton, Tucson, for plaintiffs/appellants.

Bury, Moeller, Humphrey & O'Meara, by Marshall Humphrey, III, Tucson, for defendants/appellees.

## OPINION

FERNANDEZ, Judge.

Appellants Jack and Claudia Crown appeal from a summary judgment entered against them in their wrongful death suit against appellees Claude Raymond and his wife. We find that a material fact issue

---

* Gordon, C.J., of the Supreme Court, did not    participate in the determination of this matter.

exists which precluded entry of summary judgment.

The Crowns' daughter Janet was born July 21, 1967. On October 31, 1984, when she was 17 years old, she telephoned Raymond at his gun shop, C & J Arms. She told him, "I would like to know what the laws are for purchasing a gun in Arizona." Raymond informed her she had to have proof that she was at least 21 and that an Arizona driver's license would be sufficient for that proof. Janet then inquired about the price range of handguns. Approximately two hours later, Janet arrived at Raymond's store and told him she was the one who had called earlier. Janet stood five feet one-half inch tall and weighed 95 pounds. She was wearing "double colored" dark glasses and had on a large black hat and high heels.

Janet told Raymond she wanted a gun for target shooting, and he recommended a Smith & Wesson .22. Janet decided she did not want the gun after she learned it cost over $300. She then selected a .380 caliber Iver Johnson handgun. Raymond told her that gun was not considered a target gun and that the cost of ammunition for it made it expensive to shoot. Janet replied that she was small and the gun fit her. She then purchased the gun for $262.15 and bought a box of ammunition for $16, paying cash in $20 bills. For identification, Janet showed Raymond her Arizona driver's license, and he copied the number on it to the federal form required for gun sales.

The transaction took place about 1:30 p.m. on October 31. At 6:00 a.m. on November 1, Janet Crown used the gun to kill herself. The police officer who found Janet's body also found her Arizona driver's license at the scene. Raymond told the officer it was the same license Janet had showed him. The year of birth on the license had very obviously been altered and looked somewhat as though "63" was the year of birth, but the three was very smudged and appeared to have been written either in pencil or in an ink color different than that of the rest of the writing. The picture indicates that Janet was very young in appearance. Raymond told the police officer, "I can't read the numbers. I'm half blind." Raymond has a cataract in his right eye and his vision in that eye is very blurred. In addition, he has a double astigmatism in his left eye. Although he correctly copied the driver's license number on to the federal firearms form, and although he later commented to Janet that they were both born in the same month, he told the police officer he had not noticed that the last digit of the year of birth had been obliterated.

Janet's parents sued Raymond for wrongful death. Both parties moved for summary judgment, and the trial court granted Raymond's motion, finding that there were "no facts upon which the Court can find that the event in question was reasonably foreseeable."

The Crowns contend on appeal that the trial court erred in granting Raymond's motion. They contend that they are entitled to summary judgment on the issue of Raymond's liability and that the case should be remanded for trial on the issues of the amount of damages and the defenses of contributory negligence and assumption of the risk only. That contention is based on their claim that the pertinent statute in this case is an "exceptional statute" which imposes strict liability on Raymond.

## VIOLATION OF "EXCEPTIONAL STATUTE"

There are two applicable statutes in this case. A.R.S. § 13–3109(A) provides as follows:

A person who sells or gives to a minor, without written consent of the minor's parent or legal guardian, a firearm, ammunition or toy pistol by which dangerous and explosive substances may be discharged, is guilty of a class 2 misdemeanor.

The federal statute, 18 U.S.C. § 922(b), provides as follows:

It shall be unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector to sell or deliver—

(1) any firearm or ammunition to any individual who the licensee knows or has reasonable cause to believe is less than eighteen years of age, and, if the firearm or ammunition is other than a shotgun or rifle, or ammunition for a shotgun or rifle, to any individual who the licensee knows or has reasonable cause to believe is less than twenty-one years of age.

The Crowns argue that those statutes constitute "exceptional statutes" under the reasoning of *Del E. Webb Corp. v. Superior Court of Arizona*, 151 Ariz. 164, 726 P.2d 580 (1986). The supreme court discussed exceptional statutes at length in that case.

Included in the class of statutes that impose a standard of conduct of the kind which creates civil liability is a narrow subclass called 'exceptional statutes.' Restatement [(Second) of Torts] § 483 comment c [(1965)]. The violation of an exceptional statute not only gives the injured party a private cause of action and establishes defendant's negligence per se, but, in addition, denies the defendant the affirmative defenses of contributory negligence and assumption of the risk. This is a form of absolute liability for breach of statutory duty.

\*    \*    \*    \*    \*    \*

Statutes intended to protect people from the consequences of their own conduct primarily are those applicable to specific groups deemed incapable of protecting themselves, Restatement § 483 comment c, such as the mentally deficient and children. Children, for instance, will not be barred from recovery by their own conduct if their injury was the result of a violation of a statute expressly aimed at protecting them from a particular harm.

151 Ariz. at 167, 726 P.2d at 583. The court held in that case that statutes which prohibit the sale of liquor to minors are intended primarily to protect the general public and therefore are not exceptional statutes, the violation of which results in absolute liability. We find sufficient similarities between the statute prohibiting the sale of liquor to minors and the statutes prohibiting the sale of firearms to minors to conclude that the latter do not constitute exceptional statutes under the reasoning of *Del E. Webb* so as to warrant the imposition of absolute liability upon Raymond.

## NEGLIGENCE PER SE

The evidence shows that Raymond violated either the Arizona or the federal statute prohibiting the sale of firearms to minors when he sold the handgun to 17–year–old Janet. The Crowns contend that the trial court erred in granting Raymond's summary judgment motion, arguing that the violations constituted negligence per se and that the issue should have been submitted to the jury.

"It is the prevailing rule, recognized in Arizona, that a breach of a statute intended as a safety regulation is not merely evidence of negligence but is negligence per se." *Brannigan v. Raybuck*, 136 Ariz. 513, 517, 667 P.2d 213, 217 (1983). In that case, the supreme court ruled that the statute which prohibits the furnishing of liquor to a person under 19, together with the statute which requires a liquor licensee to demand identification from persons seeking to purchase liquor, "constitute legislative recognition of the foreseeable danger to both the patron and third parties, and an effort to meet that danger by enactment of laws designed to regulate the industry, to protect third persons, and to protect those who are underage from themselves." *Id.* We see no less a legislative recognition of the danger to minors and to third persons in a statute which prohibits the sale or gift of a firearm or ammunition to a minor without written parental consent. That statute is part of a chapter which prohibits various types of misconduct involving weapons and explosives.

In *Brannigan*, the supreme court reversed two summary judgments which had been entered in favor of a tavern owner and remanded the cases for trial. The plaintiffs there were the parents of three minors who had purchased a number of drinks at the defendants' establishment where no identification had been required

and who had been killed shortly after they left the tavern while riding in a pickup truck driven by one of the minors. The court found that defendants owed a duty to all three minors.

Raymond contends that violation of the statutes does not constitute negligence per se because the harm suffered by Janet is not the harm the statutes were designed to protect against, citing *Good v. City of Glendale*, 150 Ariz. 218, 722 P.2d 386 (App. 1986). Raymond concedes that, as a minor, Janet comes within the class of persons the statute was intended to protect. He argues, however, that the statute was intended to protect against negligent handling of guns by children, not intentional handling. We find no such distinction in the statute.

The Arizona statute prohibits the furnishing of a firearm to a minor without the child's parent's consent. We read the statute as evidence of the legislature's concern about children having possession of or the opportunity to use firearms without their parents' knowledge and consent. Such a blanket prohibition against the possession of firearms by children acknowledges the possibility that minors may use firearms either negligently or intentionally, thereby causing harm either to themselves or to others. We believe the proper analysis of the facts of this case is not whether the harm suffered falls outside the protection of the statute, but whether the nature of the harm suffered precludes the Crowns from recovering under the defense of contributory negligence. That analysis is consistent with the holding in *Brannigan*, supra, in which the supreme court held that both the statutory and the common-law duty applied not only to the two minor passengers but also to the minor who drove the truck, although the driver had not only intentionally consumed the alcohol but had also intentionally driven the vehicle while he was intoxicated. We hold that Raymond's violation of the statute constituted negligence per se. Under *Brannigan*, Raymond is entitled to attempt to show an excusable violation to the jury.

## PROXIMATE CAUSE

As Raymond has pointed out, even though negligence per se has been shown, in order for the Crowns to recover, they must show that Raymond's violation of the statute was the proximate cause of Janet's death. *Brand v. J.H. Rose Trucking Co.*, 102 Ariz. 201, 427 P.2d 519 (1967); *Hebert v. Club 37 Bar*, 145 Ariz. 351, 701 P.2d 847 (App.1984); *Christy v. Baker*, 7 Ariz.App. 354, 439 P.2d 517 (1968). Raymond contends that the Crowns are unable to show proximate cause in this instance because Janet's suicide was not foreseeable to Raymond. In support of his argument, Raymond cites his affidavit in which he stated that Janet appeared cheerful when she purchased the gun from him, that he noticed no unusual behavior on her part, and that he had no indication that she was depressed. Raymond's argument would be persuasive if this were a case involving an adult purchaser of a handgun. Because Janet was a minor, however, the focus of the foreseeability determination is different.

If Janet had been 22 when she purchased the gun from Raymond, we would require that she have exhibited some type of conduct which would have triggered a warning in Raymond's mind about her intended use of the gun. Because Janet was only 17, however, she comes within the ambit of the statute, which is a statement of concern by the legislature about children possessing guns without the knowledge and consent of their parents. The existence of the statute itself expresses an awareness by the legislature that children in possession of guns are at risk of injuring either themselves or others, either negligently or intentionally. That conclusion is supported by the explanation of the statute as set out in R. Gerber, Criminal Law of Arizona (1978). "This language penalizes the conveyance of a 'firearm' to any minor under a public policy rationale that minors generally lack the maturity to handle such weapons carefully." Id. at 439. Thus, in enacting the statute, the legislature declared that injury to themselves or others is foreseeable when guns are sold to minors without their parents' knowledge or consent.

We conclude that the trial court erred in granting summary judgment for Raymond. It was error for the trial court to determine as a matter of law that Janet's use of the gun to commit suicide was not reasonably foreseeable.

The judgment is reversed and the case is remanded for trial.

LIVERMORE, P.J., and ROLL, J., concur.