FOURTH DIVISION
June 29, 2007

No. 1-06-0734

JOANN CRUMPTON, as Special Administrator of )    Appeal from
the Estate of Christina Crumpton, Deceased,     )    the Circuit Court
                                     )    Of Cook County.
       Plaintiff-Appellant,                    )
                                       )
   v.                                       )
                                       )
WALGREEN COMPANY, a Corporation,      )
                                       )    Honorable
       Defendant-Appellee.                 )    Deborah M. Dooling,
                                       )    Judge Presiding.

PRESIDING JUSTICE QUINN delivered the opinion of the court:

Plaintiff Joann Crumpton filed a wrongful death and survival action against defendant Walgreen Co. (Walgreens) following the death of her daughter, Christina. Following a trial, on October 13, 2005, the jury returned a verdict in favor of plaintiff for $875,000 and also signed a special interrogatory finding that plaintiff was 25% contributorily negligent in her daughter's death. Plaintiff appeals from orders of the circuit court granting Walgreens' motion for judgment notwithstanding the verdict (judgment n.o.v.) and denying plaintiff's posttrial motion to vacate the jury's special finding that plaintiff was 25% contributorily negligent in this case. Plaintiff also appeals from the circuit court's order denying plaintiff's supplemental post-trial motion to vacate the court's order entering judgment n.o.v., to vacate the special finding that plaintiff was contributorily negligent, and to grant plaintiff a new trial. For the following reasons, we affirm.

1-06-0734

## I. Background

This case involves the death of plaintiff's daughter, Christina, a 12-year-old girl who had a history of psychosis. Christina was under the care and treatment of a number of psychiatrists and mental health professionals at various hospitals, including Riveredge Hospital. Christina was placed on an antipsychotic medication called Risperal. On September 2, 2002, plaintiff filled the prescription for Risperal at Walgreens.

The prescription for Risperal was for 90 pills, a 30-day supply, but plaintiff ran out of pills for Christina after 10 days, on September 12, 2002. Plaintiff testified that she did not notice that the pills were about to run out until there was only one pill remaining. Plaintiff testified that she attempted to use the automated Walgreens system to refill the prescription, but was not successful. Plaintiff then went to Walgreens and told the individual at the pharmacy that she had not received all of the 90 pills for the prescription. Plaintiff testified that the pharmacist told her that the computer indicated that the prescription had been properly filled and that plaintiff would need to call her doctor.

Plaintiff testified that she called Christina's therapist, Denise Hall, at Pro Care, as well as Christina's doctor, Dr. Khadija Khan, at Riveredge Hospital. Dr. Kahn returned plaintiff's call the next day, September 13, 2002, and indicated that she would call Walgreens regarding Christina's prescription. Plaintiff testified that when she called Walgreens, she was told that the doctor did not call in a prescription for Christina. Plaintiff testified that Christina did not take her medication from September 12 until September 16, 2002. Plaintiff testified that during this time Christina "acted like a normal child." Plaintiff testified that she slept with Christina at night because she

-2-

was concerned that Christina did not have her medication. Plaintiff testified that if she had noticed anything out of the ordinary about Christina, plaintiff would have taken Christina to the emergency room.

Plaintiff testified that on September 16, 2002, she took Christina to see Dr. Martha Zuelke, who wrote another prescription for Risperdal. Plaintiff testified that she filled the prescription at Walgreens on September 16, 2002, and Christina began taking pills again that evening. On September 17, 2002, plaintiff kept Christina home from school because she had started taking Risperdal again and plaintiff was told to monitor Christina for drowsiness. Christina spent the day with plaintiff and her baby brother. They had gone to Christina's father's place of employment for lunch, stopped for ice cream, and returned home. At some point after returning home, plaintiff asked Christina to straighten her bed. Christina went to her room and the next time plaintiff saw Christina she was hanging from the top of her bunk bed with a jump rope tied around her neck. Christina later died at the hospital.

Plaintiff testified that on September 22, 2002, she returned to Walgreens to determine if she had been shorted pills when the original prescription had been filled. Plaintiff testified that two technicians at Walgreens checked Christina's patient profile and informed plaintiff that the correct number of pills had been originally dispensed. Plaintiff then spoke with Dawn Stefek, a registered pharmacist, who gave plaintiff an additional 60 pills of Risperdal and a note, included in plaintiff's exhibits, stating "For Christina Crumpton [sic] We gave her 60 more Risperdal 0.25 mg on 9-23-02. It is possible we did not give her enough on 9-2-02."

Plaintiff's expert, Dr. Alex John Spadoni, a board-certified psychiatrist, testified regarding

the nature of Christina's illness and the therapeutic effects that Risperdal had on Christina's illness. Dr. Spadoni testified that in his opinion, the dosage of Risperdal prescribed for Christina at Riveredge was appropriate because she showed remarkable improvement on it and tolerated it well with little side effects. Dr. Spadoni testified that in his opinion, Christina's suicide was causally related to not taking the Risperdal medication from September 12 to September 16, 2002. Dr. Spadoni testified that if Christina had continued taking the dosage of Risperdal as prescribed she would not have committed suicide. Dr. Spadoni also testified that Christina was showing a breakthrough symptom on September 11, 2002, when she went to her school nurse complaining of hallucinations. Dr. Spadoni testified that these breakthrough symptoms would indicate that the medication should not be changed, but perhaps increased.

Dr. Spadoni also testified that he did not feel that there were sufficient grounds to conclude that Christina was a danger to herself or anybody else to justify hospitalization when she saw Dr. Zuelke on September 16, 2002. Dr. Spadoni testified that according to everyone involved, Christina's overt behavior was not psychotic. Dr. Spadoni also testified that the fact that Christina committed suicide was not foreseeable to her psychiatrist and that he would not expect a pharmacist to foresee that Christina was at risk for suicide. Dr. Spadoni testified as follows:

"Q. However, the fact that this child committed suicide, that was not foreseeable to the psychiatrist, was it?

A. It was not.

Q. If anyone is going to be able to foresee it, a psychiatrist is the person who is

best trained to be able to foresee it?

A. True.

Q. So, if it wasn't foreseeable to the psychiatrist, would you agree with me that it would not have been foreseeable to anyone at Walgreens?

A. At Walgreens? I don't quite understand the connection.

Q. If a psychiatrist could not foresee that this child was going to commit suicide, one day after she saw Dr. Zuelke, would you expect Walgreens to have considered her to be a suicide risk?

A. Walgreens?

Q. Yes. Walgreen[s'] people. Their pharmacist. Their technicians. Their people.

*** 

Q. Would you expect a pharmacist or a technician to foresee that this child was a risk for suicide?

A. Well, no, of course not. They are not trained."

Dr. Martha Zuelke testified that she worked at Resurrection Pro Care, a community mental health agency, providing psychiatric evaluations of children and adolescents. Dr. Zuelke testified that Denise Hall, the social worker at the clinic, requested that she see Christina because Christina was in need of more medication. Dr. Zuelke testified that she was unable to prescribe more medication over the telephone because she had not previously evaluated Christina and given the original prescription. Dr. Zuelke testified that Dr. Khan, at Riveredge Hospital, had provided the original prescription.

Dr. Zuelke testified that she saw Christina on September 16, 2002, and her assessment was that Christina was not in imminent danger of injuring herself. Dr. Zuelke testified that Christina was not expressing ideas, impulses or behavior indicating she was at risk of injuring herself either purposely or inadvertently due to impulsive or agitated behavior. Christina was not presenting behavior that was a threat to others at home or apparently at school, and she was actively engaged in seeking help. Dr. Zuelke prescribed Christina a higher dosage of Risperdal but did not think it was necessary to hospitalize Christina.

Dr. Zuelke testified that it was not reasonably foreseeable that Christina was going to commit suicide. Dr. Zuelke further testified that even knowing that Christina had not been on Risperdal from September 12 to September 16, she did not consider Christina to be at risk of suicide.

Following trial, on October 13, 2005, the jury returned a verdict in favor of plaintiff for $875,000 and signed a special interrogatory finding that plaintiff was 25% contributorily negligent in Christina's death. On October 20, 2005, plaintiff filed a posttrial motion to vacate the special interrogatory finding plaintiff guilty of 25% contributory negligence. The circuit court denied that motion. On November 14, 2005, Walgreens filed its motion for judgment n.o.v. and on December 16, 2005, the parties presented their arguments on the motion. On January 13, 2006, the circuit court entered an order granting Walgreen's motion for judgment n.o.v.. In its written order, the court found that where "the only evidence before the jury was that Christina's suicide was not foreseeable to anyone including Walgreens, *** the jury's decision was against the manifest weight of the evidence and must be overturned." On March 3, 2006, the circuit court

1-06-0734

entered an order denying plaintiff's supplemental posttrial motion to reconsider the entry of judgment n.o.v. in favor of Walgreens and requesting a new trial.

On appeal, plaintiff contends that: (1) the circuit court improperly granted judgment n.o.v. where plaintiff established legal causation; (2) plaintiff is entitled to a new trial; (3) the special finding that plaintiff was 25% contributorily negligent is contrary to the evidence and law; and (4) plaintiff is entitled to statutory interest on the original verdict from the date of its entry until the judgment is satisfied.

## II. Analysis

### A. Standard of Review

The legal principles governing this court's review are well established. "Judgment notwithstanding the verdict [judgment n.o.v.] is properly granted where all the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand." Washington v. City of Chicago, 188 Ill. 2d 235, 238 (1999). A motion for judgment n.o.v. will be granted only if there is a total failure or lack of evidence to prove an essential element of the plaintiff's case. Pempek v. Silliker Laboratories, Inc., 309 Ill. App. 3d 972, 981 (1999). We review the trial court's decision regarding judgment n.o.v. de novo. Moss v. Amira, 356 Ill. App. 3d 701, 705 (2005).

### B. Proximate Cause

"Proximate cause is one of three elements a plaintiff must prove to succeed in a negligence action: (1) the defendant owed a duty of care; (2) the defendant breached that duty; and (3) the

plaintiff's resulting injury was proximately caused by the breach." Hooper v. County of Cook, 366 Ill. App. 3d 1, 6 (2006). The issue of the existence of proximate cause is ordinarily determined by the trier of fact. Hooper, 366 Ill. App. 3d at 7. "However, where the facts are undisputed and reasonable people would not differ as to the inferences to be drawn from the facts, proximate cause may be determined as a matter of law." Suwanski v. Village of Lombard, 342 Ill. App. 3d 248, 255 (2003).

"There are two requirements for a showing of proximate cause: cause in fact and legal cause." Hooper, 366 Ill. App. 3d at 7. We are concerned in this case with legal cause. Legal cause presents a question of foreseeability. "Legal cause is established if an injury was foreseeable as the type of harm that a reasonable person would expect to see as a likely result of his or her conduct." Hooper, 366 Ill. App. 3d at 7; Suwanski, 342 Ill. App. 3d at 255. "A proximate cause is one that produces an injury through a natural and continuous sequence of events unbroken by any effective intervening cause." Chalhoub v. Dixon, 338 Ill. App. 3d 535, 539 (2003).

Here, since the intervening force was Christina's suicide, the question of proximate cause involves whether the suicide was foreseeable to Walgreens. "It is well established under Illinois law that a plaintiff may not recover for a decedent's suicide following a tortious act because suicide is an independent intervening event that the tortfeasor cannot be expected to foresee." Chalhoub, 338 Ill. App. 3d at 539-40. However, plaintiff argues that the circuit court erred in applying the general rule that suicide is an independent intervening act that would break the chain of causation. Rather, plaintiff asserts that proximate cause in this case should be determined based on the foreseeability that Christina's psychosis would return due to Walgreens' alleged

negligence and not based on Christina's subsequent suicide. In making her argument, plaintiff relies on the exception to the general rule that suicide is an independent intervening act as found in Stasiof v. Chicago Hoist & Body Co., 50 Ill. App. 2d 115 (1964), *aff'd sub nom.* Little v. Chicago Hoist & Body Co., 32 Ill. 2d 156 (1965), and this court's determination in Repinski v. Jubilee Oil Co., 85 Ill. App. 3d 15 (1980).

In Stasiof, the plaintiff attempted suicide five years after an automobile accident. In the interim he had lived a reasonably normal life. This court held that suicide or attempted suicide is not a natural or probable result of a defendant's negligence. This court described the act of suicide as "an independent intervening act which the original tortfeasor could not have reasonably expected to foresee." Stasiof, 50 Ill. App. 2d at 122. However, in Stasiof, we also recognized an exception exists when, "as the proximate result of an injury upon his head caused by the negligence of another; the person injured becomes insane and bereft of reason, and while in this condition and as a result thereof he takes his own life. His act in this case is not a voluntary one, and therefore does not break the causal connection between the suicide and the act which caused the injury." Stasiof, 50 Ill. App. 2d at 122. Because the plaintiff in that case was not rendered bereft of reason by the accident, we determined that plaintiff could not introduce evidence of injuries from the attempted suicide. Stasiof, 50 Ill. App. 2d at 123-24.

Our supreme court affirmed the Stasiof decision and noted that "[t]he universal rule followed by most jurisdictions is that the victim's act of suicide is a new and independent agency breaking the chain of causation from the negligent act and is not reasonably foreseeable." Little, 32 Ill. 2d at 158-59. The court went on to quote the " 'better view' " expressed by Dean Prosser

1-06-0734

(D. Torts § 49 at 273-74 (2d ed. 1955) that if " 'insanity prevents [the victim] from realizing the nature of his act or controlling his conduct, his suicide is to be regarded either as a direct result and no intervening force at all, or as a normal incident of the risk, for which the defendant will be liable. *** But if the suicide is during a lucid interval when he is in full command of his faculties but his life has become unendurable to him, it is agreed that his voluntary choice is an abnormal thing, which supercedes the defendant's liability.' " Little, 32 Ill. 2d at 159.

In Repinski, this court determined that the plaintiff could submit evidence of his suicide attempt in seeking damages for pain and suffering in a negligence case against the defendant. The plaintiff brought an action against the City of Chicago and a gasoline station after the plaintiff tripped in a hole in a gasoline station driveway which was also a city sidewalk. This court, relying on Little, found that plaintiff met the requirements for the admission of evidence of his suicide attempt which allegedly was the result of the accident, where there was evidence that the suicide attempt took place slightly more than three months after the accident and shortly after he learned that he was permanently disabled and would be unable to work. Plaintiff's counsel also stated that a psychiatrist would testify that there was a causal connection between the two events and that plaintiff was suffering from a psychotic condition of depression which left him bereft of his free will. Based on this proffered evidence, this court determined that the trial court should have admitted evidence of the plaintiff's suicide attempt and that the jury should decide whether the suicide attempt was caused by insanity which resulted from the fall or was a conscious, voluntary decision by plaintiff who had found his present state in life to be unendurable. Repinski, 85 Ill. App. 3d at 25-26.

-10-

1-06-0734

In accordance with Stasiof and Repinski, plaintiff argues that proximate cause was established in this case where the evidence showed that Walgreens' negligence in filling the prescription at issue caused Christina to be so bereft of reason as to cause her to commit an involuntary suicide. We disagree.

Unlike the present case, neither Stasiof nor Repinski involved individuals who suffered from a preexisting mental illness. Both cases involved mentally healthy individuals who were physically injured by the defendants' actions and then the plaintiffs attempted to commit suicide at a later time. The issue in those cases was whether those plaintiffs could recover as an element of damages the pain and suffering they endured when they attempted suicide. In Stasiof and Repinski, we examined whether the plaintiffs laid the proper foundation for the admissibility of the evidence of the plaintiffs' suicide attempts. In those cases, this court determined that the proper foundation was testimony regarding the plaintiff's state of mind. Unlike Stasiof and Repinski, here, Christina had a mental condition requiring medication before any involvement with Walgreens. We find the present case similar to the facts in Moss v. Meyer, 117 Ill. App. 3d 862 865-66 (1983).

In Moss, this court relied upon Stasiof when it held that the plaintiff could not recover for injuries resulting from an attempted suicide. The defendant was a pharmacy charged with negligence by the plaintiffs because it had left a prescription at the doorstep of their home. The prescription refill had been requested by the plaintiffs' minor child. When she received the prescription, the minor child followed through with her suicide plan by ingesting a large number of capsules. Plaintiffs asserted that the pharmacy was negligent and that its negligence was the

-11-

proximate cause of the minor child's injuries. This court disagreed and found that the minor child's conduct was not foreseeable and that the evidence was insufficient to show that defendant's negligent conduct caused the child to be so bereft of reason as to cause her to attempt suicide. We noted that the evidence in the child's deposition indicated that she understood the dangers of the drugs and admitted that the suicide attempt was a voluntary, intentional act. We concluded that the defendant's conduct could not have been the proximate cause of injury. Moss, 117 Ill. App. 3d at 865-66.

Like the plaintiffs in Moss, plaintiff here also asserts that the exception to the general rule should apply where defendant's negligence caused Christina to become insane and commit suicide. However, the evidence did not show that Christina was so bereft of reason as to cause her to commit suicide. Plaintiff testified that Christina did not take her medication from September 12 until September 16, 2002. Plaintiff also testified that during this time Christina "acted like a normal child." Plaintiff further testified that if she had noticed anything out of the ordinary about Christina, plaintiff would have taken Christina to the emergency room. While Dr. Spadoni testified that, in his opinion, Christina's suicide was causally related to not taking the Risperdal medication from September 12 to September 16, 2002, he also testified that he did not feel that there was sufficient ground to conclude that Christina was a danger to herself or anybody else to justify hospitalization when she saw Dr. Zuelke on September 16, 2002. Dr. Spadoni testified that according to everyone involved, Christina's overt behavior was not psychotic. Dr. Zuelke testified that she saw Christina on September 16, 2002, and her assessment was that Christina was not in imminent danger of injuring herself. Dr. Zuelke testified that Christina was

not expressing ideas, impulses or behavior indicating she was at risk of injuring herself either purposely or inadvertently due to impulsive or agitated behavior. Christina was not presenting behavior that was a threat to others at home or apparently at school, and she was actively engaged in seeking help.

Plaintiff further argues that the jury decided that Christina was bereft of reason, and therefore proximate cause was satisfied to hold Walgreens liable. While this court has recently held that it was reversible error for a trial court to refuse to submit a special interrogatory to the jury on the foreseeability of a patient's suicide (see Hooper, 366 Ill. App. 3d at 8), that is not at issue here. Contrary to plaintiff's assertion, the jury in this case was not asked to answer whether Christina was bereft of reason in either the jury instructions or a special interrogatory.

Accordingly, we find no reason to depart from the general rule "that a plaintiff may not recover for a decedent's suicide following a tortious act because suicide is an independent intervening event that the tortfeasor cannot be expected to foresee." Chalhoub, 338 Ill. App. 3d at 539-40. In this case, all of the testimony indicated that it was not foreseeable that Christina would commit suicide. Christina's treating psychiatrist, Dr. Zuelke, testified that it was not reasonably foreseeable that Christina was going to commit suicide. Dr. Zuelke also testified that even knowing that Christina had not been on Risperdal from September 12 to September 16, she did not consider Christina to be at risk of suicide. Further, plaintiff's expert, Dr. Spadoni testified that the fact that Christina committed suicide was not foreseeable to her psychiatrist and that he would not expect a pharmacist to foresee that Christina was at risk for suicide. Therefore, we conclude that plaintiff did not prove that Christina's suicide was foreseeable and that judgment

1-06-0734

n.o.v. was properly granted in this case.

C. Plaintiff's Request for a New Trial

Plaintiff next contends that she is entitled to a new trial where she was unfairly prejudiced by Walgreens eliciting testimony regarding plaintiff's prior mental history. Plaintiff suggests that this misconduct on the part of Walgreens led the jury to enter the special finding that plaintiff was 25% contributorily negligent in causing Christina's death.

The record shows that plaintiff filed a motion in limine to bar the introduction of evidence related to plaintiff's prior mental health. Plaintiff specifically sought to exclude the admission screening form from Christina's treatment at Riveredge which indicated that plaintiff had a history of psychiatric commitment, hearing voices, and occasional visual hallucinations and that she previously had taken Risperdal. The circuit court denied plaintiff's motion in limine in part allowing the introduction of her mental history but granted the motion in part barring a statement in the screening form that plaintiff reported hearing voices telling her to hurt her children.

Plaintiff argues that she was prejudiced by Walgreens asking questions regarding plaintiff's mental history during its cross-examination of Dr. Kahn. The complained of testimony is as follows:

> "Q. And they discussed the concerns they had about the safety of the
>
> children due to the reporting in the family session that she continues to hear voices,
>
> and they tell her to hurt her children - - excuse me.
>
> ***

-14-

1-06-0734

> [JUROR]: Can you repeat that?
>
> THE COURT: We're going to strike it. Counsel is not going to repeat it. You're to disregard what counsel just said.
>
> Q. They were concerned on this note, and I don't want to go into the substance of it. But they were concerned about the mother's ability to take care of the child; isn't that true?
>
> [PLAINTIFF'S COUNSEL]: Judge, I have a motion to make at the appropriate time."

The record shows that after the testimony was presented, plaintiff's counsel argued for a mistrial based on Walgreens' violation of the order in limine which barred testimony relating to plaintiff's statement that voices instructed her to harm her children. The circuit court denied the motion for mistrial.

Plaintiff argues that Walgreens' only purpose in questioning Dr. Kahn regarding plaintiff's prior mental history was to unfairly prejudice the jury against plaintiff and that Walgreens' violation of the motion in limine warrants a new trial. Contrary to plaintiff's assertion, the record shows that Walgreens' counsel repeatedly argued that plaintiff's mental health was part of this case because Christina was sent home with her, when plaintiff herself may have been suffering from mental health issues. Walgreens argued that its theory of the case was that Christina's treating physicians should have been aware of plaintiff's mental health issues. In addition, counsel's question relating to plaintiff's statement about voices telling her to harm her children, in

-15-

violation of the motion in limine, was extremely brief due to the trial court's immediate sua sponte action and to the extent that any prejudice occurred, it was cured by the circuit court's instruction to the jury to disregard counsel's question. See McDonnell v. McPartlin, 192 Ill. 2d 505, 534 (2000).

Since judgment n.o.v. was properly granted in this case and plaintiff was not entitled to a new trial, we need not consider plaintiff's further contentions that the jury's special finding that she was 25% contributorily negligent should be vacated and that she is entitled to statutory interest on the original verdict until the judgment is satisfied.

### III. Conclusion

For the above-stated reasons, we affirm the circuit court's determination granting judgment n.o.v. in this case and denying plaintiff's request for a new trial.

Affirmed.

CAMPBELL and NEVILLE, JJ., concur.