In the

# United States Court of Appeals
## For the Seventh Circuit

No. 08-4226

MARK D. JOHNSON, individually
and as Administrator of the ESTATE OF
CANDACE M. JOHNSON, deceased,

*Plaintiff-Appellant,*

*v.*

WAL-MART STORES, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 08-1126—**Michael M. Mihm**, *Judge.*

ARGUED NOVEMBER 4, 2009—DECIDED DECEMBER 1, 2009

Before CUDAHY, FLAUM, and EVANS, *Circuit Judges.*

FLAUM, *Circuit Judge.* Plaintiff-appellant Mark Johnson sued defendant-appellee Wal-Mart Stores, Inc. ("Wal-Mart") on a negligence theory for selling bullets to his wife, Candace Johnson, without asking her to present the identification card required by Illinois law. The woman did not have said card at the time of purchase. She subsequently used the bullets to commit suicide. At

the district court, Wal-Mart prevailed on a Fed. R. Civ. P. 12(b)(6) motion by arguing that the Illinois "suicide rule" broke the causal chain between a negligent act and the resultant harm. Johnson now appeals the district court's grant of the motion to dismiss.

For the following reasons, we affirm the district court's judgment.

## I.  Background

This is a diversity negligence case governed by Illinois law. Appellant Mark Johnson is the Administrator of the Estate of Candace M. Johnson, his deceased wife. On January 22, 2008, Candace Johnson walked into a Wal-Mart store in Peoria and purchased bullets without possessing an Illinois Firearm Owner's Identification ("FOID") Card. Plaintiff-appellant alleges that Christy S. Blake, a sales clerk in the sporting goods department of the store, did not require Candace to present a FOID Card. Under the Firearm Owners Identification Card Act ("FOIC Act"),

> [N]o person may knowingly transfer, or cause to be transferred, any firearm, firearm ammunition, stun gun, or taser to any person within this State unless the transferee with whom he deals displays a currently valid Firearm Owner's Identification Card which has previously been issued in his name by the Department of State Police under the provisions of this Act.

430 ILCS 65/3(a). Plaintiff-appellant further alleges that Candace Johnson would have been unable to get such a

card because she "had been a mental patient" within five years of the incident. Appellant does not allege that Johnson was mentally ill when she purchased the bullets. The statute requires an applicant for a FOID card to submit evidence that, among other things, "[h]e or she has not been a patient in a mental institution within the past 5 years and he or she has not been adjudicated as a mental defective . . . ." 430 ILCS 65/4(a)(2)(iv).

When Candace got home from Wal-Mart, she loaded the bullets into a revolver and shot herself in the chest. Her husband returned from work a few hours later and discovered her bleeding on the floor, still alive. He called the ambulance, which transported Candace to a hospital. Candace died there the next morning.

On May 30, 2008, Johnson filed his complaint against Wal-Mart in the United States District Court for the Central District of Illinois. The complaint set forth four theories of liability: negligence, wrongful death, and two emotional distress claims. Defendant moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. With respect to the two theories of liability at issue in this appeal, Wal-Mart argued that suicide is an independent intervening event that prevents plaintiff from showing proximate cause, a necessary element for recovery in a negligence action. The district court agreed. In an order dated November 10, 2008, the court dismissed all claims but granted Johnson leave to amend his complaint to allege that the suicide was a foreseeable consequence of the statutory violation.

Plaintiff instead moved for a final order, from which he now appeals the dismissal of the negligence and wrongful death claims. Johnson argues that we should reverse the district court's judgment because "the suicide rule should not prevail over the prima facie evidence rule." Johnson abandons his emotional distress claims.

## II. Discussion

We review a district court's decision to dismiss a case under Fed. R. Civ. P. 12(b)(6) de novo. *Michalowicz v. Village of Bedford Park*, 528 F.3d 530, 534 (7th Cir. 2008). In doing so, we accept the allegations in plaintiff's complaint as true and draw all reasonable inferences in favor of the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). In order to survive a motion to dismiss, the complaint must make factual allegations that "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Johnson alleges that Wal-Mart was negligent in training Christy Blake, the sporting goods department sales clerk who sold bullets to Candace, in the appropriate procedure for dealing in firearms or ammunition pursuant to the FOIC Act. Under Johnson's theory, this deficient training and the prohibited transaction that followed together caused his wife's death. To state a negligence claim under Illinois law, "the plaintiff must establish that the defendant owed a duty of care, that the defendant breached that duty, and that the plaintiff incurred injuries proximately caused by the breach."

*Espinoza v. Elgin, Joliet & E. Ry. Co.*, 649 N.E.2d 1323, 1326 (Ill. 1995). Under *Crumpton v. Walgreen Co.*, 871 N.E.2d 905, 910 (Ill. App. Ct. 2007), "[a] proximate cause is one that produces an injury through a natural and continuous sequence of events unbroken by any effective intervening cause."

Traditionally, Illinois courts have found suicide to be an unforeseeable act that breaks the chain of causation required by proximate cause. *See, e.g.*, *Jarvis v. Stone*, 517 F. Supp. 1173 (N.D. Ill. 1981); *Luss v. Village of Forest Park*, 878 N.E.2d 1193 (Ill. App. Ct. 2007). " 'It is well established under Illinois law that a plaintiff may not recover for a decedent's suicide following a tortious act because suicide is an independent intervening event that the tortfeasor cannot be expected to foresee.' " *Crumpton v. Walgreen Co.*, 871 N.E.2d at 910 (quoting *Chalhoub v. Dixon*, 788 N.E.2d 164, 167 (Ill. App. Ct. 2003)). This rule carries an exception that deems suicide foreseeable when the defendant's conduct caused an injury, most often to the head, that made the decedent so " 'bereft of reason' " as to cause him to attempt suicide. *Crumpton*, 871 N.E.2d at 911 (quoting *Stasiof v. Chicago Hoist & Body Co.*, 200 N.E.2d 88, 91 (Ill. App. Ct. 1964), *aff'd sub nom. Little v. Chicago Hoist & Body Co.*, 203 N.E.2d 902 (Ill. 1965)). Johnson does not assert that the exception covers his complaint.

Instead, plaintiff-appellant argues that Wal-Mart violated the FOIC Act by selling his wife bullets without examining her FOID Card, that this violation constitutes prima facie evidence of negligence under Illinois law,

and that "suicide does not break the chain of causation within the context of application of the prima facie evidence rule." Plaintiff concludes that the combination of these three conditions entitles him to submit his claim to a jury. The district court rejected this reasoning. The court defined its inquiry as "[w]hether the suicide rule applies in a case where a firearms dealer has sold ammunition to a person who did not have a FOID card," identified the case as one of first impression in this Circuit, and noted the dearth of authority on the matter in our sister courts. It then found that plaintiff failed to establish that Wal-Mart's violation of the FOIC Act was the proximate case of Johnson's death, "a showing which would appear to be precluded by the suicide rule as a matter of law" because nothing in the complaint enabled the court to draw the inference that Johnson's suicide was foreseeable.

Plaintiff's first two propositions are uncontroversial. In our review of the district court's dismissal, we accept Johnson's allegation that Wal-Mart violated the FOIC Act as true. We may also reasonably infer that the Act is a public safety statute within the meaning of *Kalata v. Anheuser-Busch Cos.*, 581 N.E.2d 656 (1991), and that its violation is indeed prima facie evidence of negligence in Illinois. *Id.* at 661 ("A violation of a statute or ordinance designed to protect human life or property is prima facie evidence of negligence") (quoting *Barthel v. Ill. Cent. Gulf R.R. Co.*, 384 N.E.2d 323, 326 (1978)).

To support his third point, appellant cites portions of *Kalata*:

> A party injured by such a violation may recover only by showing that the violation proximately caused his injury and the statute or ordinance was intended to protect a class of persons to which he belongs from the kind of injury that he suffered. The violation does not constitute negligence per se, however, and therefore the defendant may prevail by showing that he acted reasonably under the circumstances.

581 N.E.2d at 661. He places particular emphasis on the following segment:

> The intervention of independent concurrent or intervening forces will not break causal connection if the intervention of such forces was itself probable or foreseeable. What is the proximate cause of an injury is ordinarily a question of fact to be determined *by a jury* from a consideration of all of the evidence.

*Id.* at 662 (emphasis added) (quoting *Davis v. Marathon Oil Co.*, 356 N.E.2d 93, 99 (Ill. 1976)). This language does little to aid Johnson. The plaintiff in *Kalata* presented some evidence that an icy stairway constructed in violation of the Chicago Municipal Code acted as a proximate cause of his injuries, but the parties disagreed on whether this evidence entitled plaintiff to a finding of proximate cause as a matter of law. Upon review of the record, the Illinois Supreme Court decided to send the issue to a jury. That is, the court chose the option that gave the statutory violation relatively less legal weight.

The current case presents a very different issue, namely, whether the alleged violation of a public safety statute alone can generate a reasonable inference of proximate

cause in the presence of a suicide. In this context, where the appellant wishes to assign the transgression more weight than the district court thought proper, *Kalata* does not require us to deviate from the traditional rule describing suicides as intervening acts that break the causal chain because of their presumptively unforeseeable nature. Most other jurisdictions utilize the same approach. *See, e.g.*, *Brashear v. Wal-Mart Stores, Inc.*, 117 F.3d 1420, 1997 U.S. App. LEXIS 17734, at *5 (6th Cir. July 10, 1997) (affirming grant of summary judgment in favor of Wal-Mart in a suit arising out of the suicide of a nineteen-year-old who purchased a handgun at the defendant's store in violation of 18 U.S.C. § 922(b), the federal gun control statute, because the suicide broke the chain of causation); *Scoggins v. Wal-Mart Stores, Inc.*, 560 N.W.2d 564 (Iowa 1997); *Rains v. Bend of the River*, 124 S.W.3d 580 (Tenn. 2003) (finding that suicide is not a reasonably foreseeable consequence of selling bullets to a "well-adjusted" eighteen-year-old in violation of 18 U.S.C. § 922(b) and ordering summary judgment for retailer). Courts in these states generally allow for potential liability only when additional circumstances concomitant with the improper purchase lead to an objectively reasonable inference that the buyer will commit suicide. *See, e.g.*, *Knight v. Wal-Mart Stores, Inc.*, 889 F. Supp. 1532 (S.D. Ga. 1995) (finding foreseeability to be an issue of material fact when purchaser was well-known at local gun store, looked "crazy" and upset, and the store turned on a security code after the purchaser walked in).

Appellant presents one instance where a state court rejected this approach and found proximate cause in a

statutory violation alone. *See Crown v. Raymond*, 764 P.2d 1146 (Ariz. 1988). In *Crown*, the Arizona Supreme Court confronted a situation where a five-foot-one, seventeen-year-old girl who appeared to be in good spirits purchased a handgun in violation of both federal and state laws prohibiting gun sales to minors and used it to commit suicide the next day. The court did hold that the existence of the state statute "itself expresses an awareness by the legislature that children in possession of guns are at risk of injuring either themselves or others, either negligently or intentionally," and satisfies the requirement for proximate cause. *Id.* at 1149. It then remarked that the argument that the decedent appeared cheerful when buying the gun "would be persuasive if this were a case involving an adult purchaser." *Id.* Without going so far as to establish that a statutory violation always makes suicide reasonably foreseeable, *Crown* thus laid the foundation for the reading of the FOIC Act Johnson urges us to adopt. Yet Illinois courts have stood firm in their adherence to the traditional suicide rule in the two decades that have passed since *Crown* came down, even though the FOIC Act has been in effect since 1992. Moreover, Arizona law made violation of the statute at the heart of *Crown* negligence per se, not prima facie evidence of negligence. For these reasons, we find *Crown* unpersuasive. In our view, Illinois law continues to deem suicide an independent intervening event that breaks the chain of causation, even after an illicit gun sale.

Elsewhere in his brief, Johnson seems to acknowledge that foreseeability of the injury is a necessary condition of

his negligence claims and argues that suicide in this case was foreseeable. He bases this assertion on two grounds. First, he claims that the FOIC Act "provides built-in foreseeability of harm from an illegal sale of firearms or ammunition" because it prohibits certain categories of people from getting the ID. Even if we were to read the statutory requirements that FOID applicants certify they have not been in a mental institution within five years of applying for the card as prohibitions on firearm purchases by this category of people, nothing in the statute suggests that such a prohibition is designed to prevent suicide. Under plaintiff's logic, every murder or violent crime committed with a gun purchased in violation of the FOIC Act would impose liability on the retailer. In the absence of an explicit legislative command that establishes a strict liability regime, that cannot be the outcome. As the district court correctly determined, the FOIC Act cannot currently bridge the gap left in a negligence action that does not separately establish proximate cause.

Johnson also argues that because suicides outnumber murders nationwide and the former may be foreseeable under Illinois law, the latter must be too. He cites data from the Center for Disease Control, which counted 29,350 suicides nationwide in 2000 and 16,765 murders in the same period. *See Suicide in the U.S.: Statistics and Prevention*, National Institute of Mental Health (July 27, 2009), *available at* http://www.nimh.nih.gov/health/publications/suicide-in-the-us-statistics-and-prevention/index.shtml. Regardless of whether these

individual data points actually represent statistically robust relationships between the two types of death over time, Johnson's argument holds no merit. Raw incident counts have little bearing on proximate cause analysis for a public safety statute, where courts determine whether the alleged harm is of the type the legislature meant to prevent with its law. *See Young v. Bryco Arms*, 821 N.E.2d 1078, 1086 (Ill. 2004); *Kalata*, 581 N.E.2d at 661. Otherwise, a violation of every public safety rule would lead to liability for harms incurred in high-frequency events like auto accidents, no matter how attenuated that outcome is from the behavior targeted by the infringed statute.

In addition to the above objections, plaintiff attempts to portray the suicide rule as a relic of "a medieval Christian view that suicide was a sin and a crime." This free-floating critique of established law is both weak and shallow. If we were to find that the sale of bullets to Candace was the proximate cause of her suicide without any specific evidence of foreseeability, we would be rejecting the premise that the woman retained free will. That is, we would be holding that the decedent's decision to use an improperly obtained but legal product to end her own life was a nullity from the perspective of the law. A finding of proximate cause on these bare facts would be tantamount to a statement that Candace died in a normal, predictable fashion expected from anyone who violates the FOIC Act. This conclusion would reject the idea of self-determination, a central tenet of the very Enlightenment philosophy plain-

tiff espouses. Fortunately, the law calls for the opposite result.

Finally, Johnson claims that the district court erroneously dismissed the case under the principles of negligence per se instead of prima facie negligence. Appellees correctly point out that the former is actually a more generous presumption than the latter. Nonetheless, to ensure recovery, both doctrines demand proximate cause, which is absent from the case before us. *See Bier v. Leanna Lakeside Prop. Ass'n*, 711 N.E.2d 773, 783 (Ill. App. Ct. 1991) ("Conduct violating legislated rules is negligent, and if a statutory violation proximately causes an injury of the kind the legislature had in mind when it enacted the statute, the offending party is civilly liable for that injury."). Appellant misinterprets a subsequent sentence in that same decision: "Thus, if the violation of a statute constitutes prima facie evidence of negligence, the case goes to the jury and cannot be dismissed on the basis of the lack of a common-law duty." *Id.* at 783. The line does not guarantee access to a jury in all situations where a plaintiff presents some prima facie evidence of one or two negligence elements. It just explains that, for certain statutory violations, such evidence prevents a court from dismissing the claim for failure to show the existence of a duty. Courts remain entirely free to dismiss a claim supported by prima facie evidence where the pleadings do not permit a reasonable inference of proximate cause.

### III. Conclusion

For the foregoing reasons, we AFFIRM the district court's grant of Wal-Mart's motion to dismiss the complaint.