In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-3379

BEVERLY STAYART,

*Plaintiff-Appellant*,

*v.*

YAHOO! INC., OVERTURE SERVICES,
INC., d/b/a ALTA VISTA AND VARIOUS,
INC., d/b/a FRIENDFINDER.COM,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 09 CV 00116—**Rudolph T. Randa**, *Judge.*

ARGUED MARCH 31, 2010—DECIDED SEPTEMBER 30, 2010

Before MANION and WILLIAMS, *Circuit Judges*, and
DARRAH,* *District Judge.*

MANION, *Circuit Judge.* Like many, Beverly Stayart was
curious about what she would find when she put her

---

* Hon. John W. Darrah, District Judge for the Northern
District of Illinois, is sitting by designation.

name into a search engine. In this case it was Yahoo. To her dismay, the comprehensive search results eventually contained links to websites and advertisements that she found shameful. She then sued Yahoo and the other defendants alleging trademark infringement and a host of state law claims. The district court dismissed her complaint, finding she lacked standing under the Lanham Act to sue for trademark infringement. She appeals, and because we agree that Stayart lacks standing under the Lanham Act, we affirm.

I.

In her complaint, Stayart describes herself as a "sophisticated, well-educated, and highly intelligent professional woman." She has an M.B.A. from the University of Chicago, she has written a few papers that appear on the internet, and she is passionate about the environment, particularly the plight of wild horses, wolves, and baby seals. She has written two poems about baby seals that appear on a Danish website and has vigorously protested against their treatment.

At some point, believing she was the only Beverly Stayart on the internet, she put her name into Yahoo's search engine. This case centers on what she found. Among the results she anticipated, there were also links to online pharmaceutical companies, links to pornographic websites, and links that directed her to other websites promoting sexual escapades. She searched again and again in the following weeks, sometimes amplifying her searches. For example, she searched for "Bev Stayart

Cialis" and "Levitra Bev Stayart." Each time links directing her to online pharmaceutical companies would appear. She repeated these searches numerous times, sometimes changing the terms. At one point, she noticed her name appeared linked to a weblog—"a blog"—that she had previously posted a comment on. But, when she clicked on the link, the content did not bear any relation to her comment; instead, it led her to another pornographic website.

Troubled by all of this, she wrote Yahoo and demanded that it remove all such results. It eventually emailed her, stating: "we do not aim to judge web for appropriateness or censor materials that we find offensive or inappropriate." And Stayart responded by filing suit against Yahoo and the other defendants who had some relation to the material she found disagreeable, claiming trademark infringement and various other state law claims. Specifically, she claims that the defendants' conduct violated § 43(a) of the Lanham Act because the search results that appear with her name improperly gave her endorsement to pornography and online pharmaceuticals.

In the district court, the defendants moved to dismiss Stayart's complaint, which is forty-four pages long with over thirty exhibits. In a thorough and well-reasoned opinion, the district court granted the defendants' motion, finding that Stayart pleaded herself out of court. In particular, the district court found that because she did not have a commercial interest in her name, Stayart did not have standing under the Lanham Act to make

a claim under § 43. It also declined to exercise supplemental jurisdiction over her remaining state law claims, and it denied her leave to file an amended complaint alleging diversity jurisdiction. Stayart appeals.

## II.

We review de novo a district court's decision to dismiss a complaint under Rule 12(b)(6). *Johnson v. Wal-Mart Stores, Inc.*, 588 F.3d 439, 441 (7th Cir. 2009). When evaluating the sufficiency of the complaint, we accept the well-pleaded facts as true and draw all reasonable inferences in the plaintiff's favor. *Id.* In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Reger Development, LLC v. Nat. City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (quotation omitted).

The first hurdle that Stayart must clear is to establish that she has standing under the Lanham Act. The district court found that she does not have a commercial interest in her name, and therefore lacks standing. On several occasions, we have held that before a plaintiff may assert a claim under the § 43(a) of the Lanham Act, she must have a commercial interest to protect. 15 U.S.C. § 1125(a). *Dovenmuehle v. Gilldorn Mortg. Midwest Corp.*, 871 F.2d 697, 700 (7th Cir. 1989); *L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc.*, 9 F.3d 561, 575 (7th Cir. 1993); *see also Made in the USA Foundation v. Philips Foods, Inc.*, 365 F.3d 278, 280 (4th Cir. 2004) (collecting cases from other

circuits holding the same). Rather than ask us to break from our precedent, Stayart takes the position that her charitable activities show she has a commercial interest in her name.

Stayart's argument hinges on the claim that by virtue of her extensive activities, her name has commercial value. These include: humanitarian efforts on behalf of baby seals, wolves and wild horses; what she describes as "scholarly posts" on a website; two poems that appear on a Danish website; and genealogy research. To determine whether a person or entity has standing under § 43(a), we look at whether they have "a reasonable interest to protect" in a commercial activity. *Dovenmuehle*, 871 F.2d at 700; *accord Stanfield v. Osborne Ind., Inc.*, 52 F.3d 867, 873 (10th Cir. 1995). Indeed, standing to assert a § 43 claim is limited to a "purely commercial class of plaintiffs." *Berni v. Int. Gourmet Rest. of Am.*, 838 F.2d 642, 648 (2d Cir. 1988) (quotation omitted). While Stayart's goals may be passionate and well-intentioned, they are not commercial. And the good name that a person garners in such altruistic feats is not what § 43 of the Lanham Act protects: it "is a private remedy for a commercial plaintiff who meets the burden of proving that its commercial interests have been harmed by a competitor." *Made in the USA Found.*, 365 F. 3d at 281 (quotation and brackets omitted). We addressed a similar scenario in *Dovenmuehle* where we held that, under the Lanham Act, relatives who had no commercial interest in their family name did not have a reasonable interest to protect in the trade name "Dovenmuehle, Inc.," and thus lacked standing to sue. *Dovenmuehle*, 871 F.3d at 700.

Relying on cases in other circuits, Stayart argues that because her activities include advocacy and boycotts she is engaged in "services" and "commercial activities" and therefore has standing to pursue her claim. In support of this position, she cites to a case from the Second Circuit in *United We Stand Am., Inc. v. United We Stand, Am. NY, Inc.*, 128 F.3d 86, 89 (2d Cir. 1997) that discusses non-profit groups that engage in "service" and that affect "commerce." The problem with that argument is that *United We Stand* was brought under a different section of the Lanham Act: 15 U.S.C. § 1114(1)(a) or, as it is otherwise know, § 32 of the Lanham Act. That section and its language are distinct from § 43. Specifically, § 32 gives "[n]onprofit and charitable corporations . . . the same protection against confusing use of their names as is given to business corporations." 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 9:5 (4th ed. 2010). But unlike § 43, § 32 requires that a plaintiff seeking protection have "a registered mark." 15 U.S.C. § 1114(1)(a); *see Guaranty Bank v. Chubb Corp.,* 538 F.3d 587, 593 (7th Cir. 2008). Stayart has not raised a claim under § 32, and even if she had, it would still fail because she does not claim that her name is a registered trademark. Therefore, *United We Stand* is inapplicable and Stayart's activities do not give her standing under § 43.

In addition to dismissing Stayart's complaint, the district court also denied her leave to amend her complaint. We review a district court's denial for leave to amend a complaint for an abuse of discretion. *See Foster v. DeLuca*, 545 F.3d 582, 583 (7th Cir. 2008). In this case, the district court analyzed Stayart's remaining state

law claims for statutory and common law invasion of privacy and found that allowing her to re-plead her complaint and proceed on those claims under diversity jurisdiction would be futile. *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008) (noting "district courts have broad discretion to deny leave to amend where . . . the amendment would be futile."). The question of whether the district court's analysis on those claims was correct is not before us; the question is only whether it abused its discretion. It is clear after reviewing the record and the district court's analysis that it adequately considered the merits of the state law claims and the need to resolve them in federal court. And it did not abuse its discretion by denying her leave to amend.

### III.

Therefore, Stayart does not have standing under the Lanham Act to bring suit because she does not have a commercial interest in her name. Accordingly, the district court properly dismissed her Lanham Act claim. The district court also did not abuse its discretion in denying Stayart leave to re-file. The judgment of the district court is AFFIRMED.