# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued November 7, 2012      Decided December 28, 2012

No. 11-7094

SHARON M. ROLLINS, INDIVIDUALLY AND AS
PERSONAL REPRESENTATIVE FOR THE
ESTATE OF DEVIN DARRELL BAILEY,
APPELLANT

v.

WACKENHUT SERVICES, INC., ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:10-cv-00047)

———

*Gregory Stuart Smith* argued the cause and filed the briefs
for appellant.

*Matthew W. Carlson* argued the cause and filed the brief for
appellee Wackenhut Services, Inc.

*Daniel S. Pariser* argued the cause for appellees
Bristol-Myers Squibb Company, et al. With him on the brief
was *Timothy M. Broas*. *Adam S. Nadelhaft* entered an
appearance.

Before: ROGERS, BROWN and KAVANAUGH, *Circuit Judges*.

3

Opinion for the Court by *Circuit Judge* ROGERS.

Concurring opinion by *Circuit Judge* KAVANAUGH.

ROGERS, *Circuit Judge*: Sharon Rollins's son committed suicide using a gun provided by his employer while he was taking prescribed medication manufactured and distributed by two pharmaceutical companies. On appeal from the dismissal of her wrongful death and survival action against the employer and pharmaceutical companies, Rollins presents three issues. First, she contends that the district court erred in ruling she failed to state a claim of negligence against the employer when the court invoked, *sua sponte*, District of Columbia law that suicide is an intervening and independent cause of death subject to limited exceptions that were inapplicable. Alternatively, she urges certification of the negligence-liability question to the D.C. Court of Appeals. Finally, she disputes the district court's ruling that the complaint failed to state a plausible claim of products liability against the pharmaceutical companies and contends that the court then erred in denying her leave to amend the complaint. For the following reasons, we must conclude that these contentions are unpersuasive, and we affirm.

**I.**

Devin Bailey, Rollins's son, had a history of mental illness. Accepting as true the factual allegations in the complaint, *see Thompson v. District of Columbia*, 530 F.3d 914, 915 (D.C. Cir. 2008), Bailey withdrew from Penn State University after two years because of increased depression and serious mental health problems. Compl. ¶ 11. In 2006, he joined the United States Navy but was quickly discharged after having been hospitalized for psychosis only a few days into his service. Compl. ¶ 12. In April 2007, Rollins tried unsuccessfully to have her son transported to a mental hospital for inpatient treatment. Compl.

¶ 13. When the police arrived in response to a radio-run for a family disturbance and tried to restrain Bailey, he kicked one officer in the leg; Bailey was subsequently charged with assaulting a police officer and carrying a dangerous weapon — an 8-inch knife found in his pocket. Compl. ¶¶ 14–15. After he was committed by the court in July to St. Elizabeth's Hospital for a competency evaluation, Compl. ¶ 15, Bailey was diagnosed as having "Bipolar Disorder, Most Recent Episode Mixed, Severe with Psychotic Features," Compl. ¶ 17. He was released on prescribed medications, Rispardal and Depakene, after about three weeks. Compl. ¶ 17. In early 2008 he successfully completed a course in basic real estate principles at Montgomery College in Maryland and passed the written and physical examinations for a position as a firefighter/EMT in Fairfax County, Virginia. Compl. ¶¶ 18–19.

In May 2008, Bailey voluntarily admitted himself to Washington Adventist Hospital in Maryland, where doctors prescribed him the antipsychotic drug ABILIFY®. Compl. ¶ 21. An accompanying "black-box warning" stated: "Children, adolescents, and young adults taking antidepressants for major depressive disorder (MDD) and other psychiatric disorders are at increased risk of suicidal thinking and behavior. (5.2)." Compl. ¶ 23. Section 5.2 warns of "long-standing concern" about inducing worsening of depression and emergence of suicidality during early phases of treatment. Compl. ¶ 23. Bailey was discharged from the Hospital after about a week with instructions to take 20 mg of ABILIFY® daily, along with Prolixin to improve compliance. Compl. ¶ 24. In July and August he received additional prescriptions for ABILIFY® with instructions to increase the dosage to 30 mg daily, the maximum dosage. Compl. ¶ 25. ABILIFY® is manufactured and distributed in the United States by Otsuka America Pharmaceutical, Inc. ("Otsuka"), and Bristol-Myers Squibb Company ("Bristol-Myers"). Compl. ¶¶ 3–4.

In September 2008, Bailey applied for a job with Wackenhut Services, Inc., a contractor that provides security services to the federal government. Compl. ¶¶ 6, 26. Wackenhut hired him the following month as an armed security guard at Walter Reed Army Medical Center. Compl. ¶ 27. The offer of employment was contingent on completion of a "weapons qualification" and "criminal justice screening." Compl. ¶ 27. In early November, Wackenhut's National Research Center prepared a background screening report stating there was an outstanding September 10, 2007 arrest warrant for Bailey for failing to appear in court on "UNDISPOSED" assault and weapon charges. Compl. ¶¶ 28–29. Although the report was forwarded to the Field Manager and Chief of Guards who extended the offer of employment to Bailey, Wackenhut did not follow up on this information. Compl. ¶¶ 28, 30. Neither did Wackenhut obtain Bailey's military service record. Compl. ¶ 34. Instead, Wackenhut tested Bailey's firearms proficiency and issued him a gun to use in his work. Compl. ¶¶ 31–32. On November 15, 2008, Bailey received a "Diploma" declaring him a "graduate" of Wackenhut's "Security Officer Course." Compl. ¶ 35.

On December 9, 2008, Bailey shot and killed himself with a work-issued gun while on duty in a Walter Reed guard shack. Compl. ¶ 36. He was 23 years old. *See* Compl. ¶ 10.

Rollins, individually and as representative of her son's estate, filed suit in the D.C. Superior Court against Wackenhut, Otsuka, and Bristol-Myers. The complaint alleged that Wackenhut negligently issued Bailey a gun without adequately investigating his background and mental health history, Compl. ¶ 40, and that the pharmaceutical companies were strictly liable for manufacturing and distributing ABILIFY® "in a defective condition unreasonably dangerous to users and consumers, and particularly young adults such as Devin Bailey." Compl. ¶ 43.

Rollins sought compensatory damages of $1 million each for wrongful death and for survival on behalf of Bailey's estate against all defendants, and $3 million in punitive damages against Wackenhut.  On January 11, 2010, the defendants removed the lawsuit to the federal court, based on diversity jurisdiction, 28 U.S.C. §§ 1332, 1441.  The pharmaceutical companies filed answers to the complaint the same day.  The following week, on January 20, 2010, they moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(c).  Wackenhut, which had not filed an answer, moved for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).  Rollins opposed the motions.

The district court dismissed the complaint against Wackenhut for failure to state a claim pursuant to Rule 12(b)(6) and granted judgment on the pleadings to the pharmaceutical companies pursuant to Rule 12(c).  *Rollins v. Wackenhut Servs.*, 802 F. Supp. 2d 111 (D.D.C. 2011).  Rollins appeals.  Our review is *de novo*.  *Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012); *Thompson*, 530 F.3d at 915.

**II.**

Rollins alleged that her son's employer, Wackenhut, violated a special relationship and duty of protection it owned to her son by "carelessly and negligently" (1) failing to investigate the charges listed on its screening report and the information in his military service record; (2) issuing him a gun when it should have known that he was prohibited from possessing a weapon under federal law; and (3) allowing him to possess the gun for over a month.  Compl. ¶ 40.  The district court rejected Wackenhut's argument, citing *Grillo v. National Bank of Washington*, 540 A.2d 743, 744 (D.C. 1988), that Rollins's exclusive remedy was under the D.C. Workers' Compensation Act, D.C. Code § 32-1504(a) & (b).  That Act provides it "shall

not apply where injury to the employee was occasioned solely by his intoxication *or by his willful intention to injure or kill himself* or another." D.C. Code § 32-1503(d) (emphasis added). The district court agreed with Rollins, and so do we, that the Act was inapplicable, but the district court noted that by relying on D.C. Code § 32-1503(d) to escape the Act's coverage, Rollins "effectively admitted that the suicide was a willful and intentional act." *Rollins*, 802 F. Supp. 2d at 120; *see* Pl's Mem. In Opposition to Defendant Wackenhut Services, Inc.'s Motion To Dismiss Feb. 3, 2010. Observing further that Rollins claimed Wackenhut's negligence was a substantial factor in her son's death, *see* Compl. ¶ 42, the district court, *sua sponte*, invoked District of Columbia tort law and granted Wackenhut's motion to dismiss the complaint for failure to state a claim. *Id.* at 121. Rollins contends the district court erred in dismissing the complaint on the basis of a legal theory never briefed or argued in the district court, which it interpreted too narrowly, and alternatively she seeks certification of the local law question to the D.C. Court of Appeals.

**A.**

The district court may *sua sponte* dismiss a claim pursuant to Rule 12(b)(6) without notice where it is "patently obvious" that the plaintiff cannot possibly prevail based on the facts alleged in the complaint. *Baker v. Dir., U.S. Parole Comm'n*, 916 F.2d 725, 727 (D.C. Cir. 1990). In *District of Columbia v. Peters*, 527 A.2d 1269 (D.C. 1987), the District of Columbia Court of Appeals endorsed the general rule that one may not recover damages in negligence for the suicide of another, subject to the irresistible impulse exception. The rationale underlying the rule is that "[t]he act of suicide generally is considered to be a deliberate, intentional, and intervening act which precludes a finding that a given defendant is, in fact, responsible for the decedent's death." *Id*. at 1275. Drawing on the RESTATEMENT (SECOND) OF TORTS § 455 (1977), the court held that to come

within the exception to the general rule a plaintiff must show more than that the alleged negligent incident started a chain of circumstances that led to the suicide. The plaintiff must prove, as a result of the defendant's action, "the decedent could not have decided against and refrained from killing himself, and because of such uncontrollable impulse, the decedent committed suicide." *Id*. at 1276 (quoting *Orcutt v. Spokane County*, 364 P.2d 1102, 1105 (Wash. 1961) (en banc)). In *WMATA v. Johnson*, 726 A.2d 172 (D.C. 1999), the D.C. Court of Appeals, sitting en banc, reaffirmed the general rule in *Peters*, holding that the last clear chance doctrine "may not be employed to restore liability in another for a plaintiff's suicidal act." *Id*. at 178. The court additionally noted a second exception to the general rule, that liability can be restored where "an institution, such as a psychiatric hospital, ha[s] a duty of custodial care" to prevent reasonably foreseeable suicide. *Id.* at 177 n.8. The district court concluded neither exception applied to Rollins's claim against Wackenhut. *Rollins*, 802 F. Supp. 2d at 120–21.

On appeal, Rollins acknowledges the general rule under District of Columbia law against negligence liability for suicide, and appears to concede that her claim against Wackenhut does not fall within the irresistible impulse exception "as traditionally understood," Reply Br. 5 n.2. Rather, she contends, her claim falls within the second exception because Wackenhut assumed a "special relationship" with her son by issuing him a gun outside the normal firearms-distribution process. *See* Compl. ¶ 40. As Rollins sees it, Wackenhut puts its employees through a private background screening in lieu of the normal background checks that would ordinarily adhere to purchases made at licensed firearms dealers. Rollins's approach extends the special relationship exception far beyond its moorings.

The RESTATEMENT (SECOND) OF TORTS § 314A(4) explains that a special duty is imposed where a defendant "takes the

custody of another under circumstances such as to deprive the other of his normal opportunities for protection." As interpreted by the D.C. Court of Appeals, the special relationship exception applies where an institution or treatment facility, such as a hospital or jail, assumes physical custody over an individual. *Johnson*, 726 A.2d at 177 n.8. Previously the court had applied the exception where the person who committed suicide was confined in the D.C. Jail, *see Phillips v. District of Columbia*, 714 A.2d 768 (D.C. 1998), or a juvenile facility for delinquent youth, *see Clark v. District of Columbia*, 708 A.2d 632 (D.C. 1997). In *Johnson*, the en banc court also favorably cited *McLaughlin v. Sullivan*, 461 A.2d 123, 125 (N.H. 1983), which described the special relationship exception as applying where a person, such as a psychiatrist, has special medical training requiring care for the suicidal individual's mental well-being. Rollins's complaint does not allege that Wackenhut had physical custody of Bailey or had special medical training requiring it to care for his mental well-being.

Rollins maintains, nonetheless, that the district court erred by excluding the possibility that other exceptions to the general rule in *Peters* may exist. For example, Rollins alleged that if Wackenhut had properly investigated Bailey's background, it would have discovered that he was prohibited from possessing a firearm under 18 U.S.C. § 922(g). *See* Compl. ¶¶ 32–33. That provision prohibits firearms possession by any "fugitive from justice," "mental defective," or person "who has been committed to a mental institution." 18 U.S.C. § 922(g)(2), (4). The district court noted that other courts had generally rejected suicide negligence claims premised on violations of § 922(g) or other gun control statutes. *Rollins*, 802 F. Supp.2d at 121 n.6, citing *Johnson v. Wal-Mart Stores, Inc.*, 588 F.3d 439, 443 (7th Cir. 2009). Rollins offers that there is no firm alignment of courts on the question and cites a federal district court case and an intermediate appellate state court case as suggesting "additional

circumstances" could result in liability. *See Knight v. Wal-Mart Stores, Inc.*, 889 F. Supp. 1532 (S.D. Ga. 1995); *Crown v. Raymond*, 764 P.2d 1146 (Ariz. Ct. App. 1988). These authorities do not advance Rollins's cause.

The D.C. Court of Appeals has not yet addressed a case of negligent firearm distribution that resulted in suicide but it has, since *Knight* and *Crown* were decided, affirmed a broad general rule against negligence liability for suicide. *See Johnson*, 726 A.2d at 177–78. More recently, the Seventh Circuit in *Wal-Mart Stores*, 588 F.3d at 443–44, observed that Illinois courts were in much the same posture and that most other jurisdictions to address the firearms question also adhere to the "traditional rule" that suicide is an intervening, intentional act that breaks the chain of causation. Aside from *Knight* and *Crown*, Rollins provides no support for the conclusion that negligent issuance of a gun to an adult should fall within an exception to the general rule in *Peters*. Her references to the Restatement's discussion of the two exceptions recognized by the D.C. Court of Appeals are either unpersuasive or inapposite. *See* Appellant's Br. at 33–34 (citing RESTATEMENT (SECOND) OF TORTS §§ 314A, 455). As the district court observed, Rollins's allegations "raise serious questions about the diligence and care with which Wackenhut performs background checks on the employees to whom it provides firearms," *Rollins*, 802 F. Supp. 2d at 121, but taking her allegations as true, "Bailey's suicide was an intervening act that precludes [Wackenhut's] liability under D.C. law," *id*.

## B.

Rollins's suggestion, therefore, that this court should certify two questions[1] to the D.C. Court of Appeals pursuant to D.C.

---

[1] Rollins's two questions are:

Code § 11-723(a) is unavailing.  Certification is authorized where "it appears to the certifying court there is no controlling precedent in the decisions of the District of Columbia Court of Appeals."  D.C. Code § 11-723(a).  Consequently it is appropriate only where this court is "genuinely uncertain" about a question of District of Columbia law that is vital to the underlying case. *Tidler v. Eli Lilly & Co.*, 851 F.2d 418, 426 (D.C. Cir. 1988).

Rollins's hypothesis that the D.C. Court of Appeals might adopt other exceptions to the general rule against negligence liability in cases of suicide, citing *Kivland v. Columbia Orthopaedic Group, LLP*, 331 S.W. 3d 299, 309 (Mo. 2011) (en banc), fails to acknowledge that the D.C. Court of Appeals, sitting en banc, reaffirmed the general rule in limiting the last-clear-chance doctrine and that the second question she seeks to have certified reflects the views of a dissenting judge. *See Johnson*, 726 A.2d at 177–78; *id.* at 180–81 (Ruiz, J., dissenting).  Although the en banc court acknowledged that it

---

(1) Under District of Columbia law, may a plaintiff recover for the wrongful death of a person who committed suicide, against a third party that gave that person the firearm used in that suicide, when the third party knew or should have known that the person was prohibited by law from possessing a firearm?

(2) Under District of Columbia law, and under the facts set forth in the Complaint, may a plaintiff recover for the wrongful death of a person who committed suicide, where the person committing suicide had an impairment that limited the suicide victim's ability to appreciate his peril or encounter it purposely, in the form of a prescribed medication that had a recognized risk of increased suicidality?

Appellant's Br. 38.

was not deciding a question in the context of a claim of diminished mental capacity, *see id.* at 174, Rollins cannot take advantage of that reservation because, in order to avoid the exclusive coverage of the D.C. Workers' Compensation Act, she "effectively admitted that [her son's] suicide was a willful and intentional act." *Rollins*, 802 F. Supp. 2d at 120; *see* D.C. Code. § 32-1503(d). Certification based on the possibility that the D.C. Court of Appeals might adopt additional exceptions to its general rule, then, has no logical stopping point and no federal court could ever resolve an issue of state law because state courts always *might* choose to create new exceptions to their general rules. This court has not read certification authority pursuant to D.C. Code § 11-723(a) so broadly.

## III.

Rollins sought to hold the two pharmaceutical companies strictly liable under the rule in the RESTATEMENT (SECOND) OF TORTS § 402A, alleging that:

> By manufacturing and distributing ABILIFY® within the United States, despite its known risks of increasing suicidality in certain patients, Defendants Otsuka America and Bristol-Myers are liable for selling a product in a defective condition unreasonably dangerous to users and consumers, and particularly young adults such as Devin Bailey . . . .

Compl. ¶ 43. The district court granted the pharmaceutical companies' motions to dismiss pursuant to Rule 12(c) on the ground that Rollins failed to allege sufficient facts to state a plausible products liability claim. *Rollins*, 802 F. Supp. 2d at 121.

**A.**

Under the Supreme Court's rearticulation of pleading requirements in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The facts alleged must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Rudder*, 666 F.3d at 794 (quoting *Iqbal* and *Twombly*). Rollins responds — *Iqbal* and *Twombly* notwithstanding — that her complaint satisfied the pleading standard under Federal Rule of Civil Procedure 8 because Otsuka and Bristol-Myers filed responsive answers to the complaint. The filing of an answer focuses on notice pleading requirements, but does not mean that the requirements of *Iqbal* and *Twombly* do not apply to a Rule 12(c) motion, which here is functionally equivalent to a Rule 12(b)(6) motion. *See Haynesworth v. Miller*, 820 F.2d 1245, 1254 (D.C. Cir. 1987), *abrogated on other grounds by Hartman v. Moore*, 547 U.S. 250 (2006). Other circuits have held that *Iqbal* and *Tombly* apply to Rule 12(c) motions, *see Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (citing cases from other circuits); 5C WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1368, n.10.4 (Supp. 2012), and we do likewise.

The D.C. Court of Appeals has recognized three distinct categories of defective products under section 402A of the RESTATEMENT (SECOND) OF TORTS: "(1) a manufacturing defect; (2) an absence of sufficient warnings or instructions; or (3) an unsafe design." *Warner Fruehauf Trailer Co. v. Boston*, 654 A.2d 1272, 1274 (D.C. 1995). Rollins's complaint did not specify which, if any, of these categories of defects she intended to pursue. It alleged no facts to support a manufacturing defect

claim. It affirmatively pleaded that the ABILIFY® warning label warned of the precise risk of increased suicidal tendencies among young adults. *See* Compl. ¶ 23. It also alleged no facts that plausibly could satisfy either the risk-utility test for design defects, *see Warner Fruehauf*, 654 A.2d at 1276–77, or the more demanding test for unavoidably unsafe products under Comment k to the RESTATEMENT (SECOND) OF TORTS § 402A,[2] *see Fisher v. Sibley Mem'l Hosp.*, 403 A.2d 1130, 1134 (D.C. 1979). Instead, the complaint alleged facts regarding the maximum legal dosage of ABILIFY®, promotion of off-label uses, and Bailey's autopsy report, *see* Compl. ¶¶ 22, 25, 37, which bear no apparent relevance to her strict liability claim.

## B.

Rollins's second response, that the district court erred by denying her leave to amend the complaint, is without merit. Federal Rule of Civil Procedure 15(a) provides that a district court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). But Rollins failed to comply with the law of this circuit by filing a motion for leave to amend her complaint and attaching a proposed amended complaint. *Belizan v. Hershon*, 434 F.3d 579, 582 (D.C. Cir. 2006). Instead, she requested leave to amend as an alternative argument in her opposition to the companies' motions to dismiss. "[A] bare request in an opposition to a motion to dismiss — without any indication of the particular grounds on which amendment is sought — does not constitute a motion within the contemplation of Rule 15(a)." *Id.* (internal quotation marks omitted). D.C. District Court Local Civil Rule 15.1 requires a motion for leave

---

[2] Comment k, regarding "unavoidably unsafe products," as is "especially common in the field of drugs," in part states that the product is "not defective, nor is it unreasonably dangerous" where it is "properly prepared, and accompanied by proper directions and warning." RESTATEMENT (SECOND) OF TORTS § 402A, Comment k.

to amend to include a proposed amended complaint. Rollins's request neither included a proposed amended complaint nor otherwise indicated that she would be able to plead sufficient facts to state a plausible claim for relief. As a result, "it could hardly have been an abuse of discretion" for the district court to deny leave to amend. *Confederate Mem'l Ass'n, Inc. v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993).

To the extent Rollins separately objects, summarily, that the district court erred in dismissing her claim against the pharmaceutical companies with prejudice, Federal Rule of Civil Procedure 41(b) provides, in part, that "[u]nless the dismissal order states otherwise, [an involuntary dismissal] — except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19 — operates as an adjudication on the merits." *See Costello v. United States*, 365 U.S. 265, 285–86 (1961). Adjudication on the merits in this context means dismissal with prejudice. *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505–06 (2001). This court has instructed that "dismissal *with prejudice* is warranted only when a trial court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (internal quotation marks omitted). Applying this standard in *Belizan*, the court observed that "[t]he standard for dismissing a complaint with prejudice is high." 434 F.3d at 583. Most recently in *Rudder*, the court reaffirmed that "[d]ismissal with prejudice is the exception, not the rule, in federal practice, because it 'operates as a rejection of the plaintiff's claims on the merits and [ultimately] precludes further litigation of them.'" 666 F.3d at 794 (quoting *Belizan*, 434 F.3d at 583, and citing *see also Krupski v. Costa Crociere S.p.A*, 130 S. Ct. 2485, 2494 (2010) (noting "the preference expressed in the Federal Rules of Civil Procedure . . . for resolving disputes on their merits")).

The *Firestone* standard is met here.  The district court, in denying Rollins's request for leave to amend her complaint as "futile," found that Rollins "has not indicated that she will be able to plead sufficient facts to state a claim for relief." *Rollins*, 802 F. Supp. 2d at 125 n.10.  Although this is not the same as a determination by the district court that Rollins "could not allege additional facts that would cure the deficiencies in her complaint," *Belizan*, 434 F.3d at 584, Rollins's objection to dismissal of her complaint with prejudice nonetheless fails.  Any new allegations to support a defective product claim under section 402A of the RESTATEMENT (SECOND) OF TORTS would not be "consistent with the challenged pleading," *Firestone*, 76 F.3d at 1209, because Rollins's complaint alleged that the pharmaceutical companies knew ABILIFY®, when manufactured as designed, would increase the risk of suicidality to individuals like her son; indeed, that its warning label explicitly so stated, *see* Compl. ¶ 23.  It follows, in view of Comment k to section 402A, that a design defect claim also would fail in the circumstances pled by Rollins.  *See supra* Part II.A & n.2.  Rollins did not file a motion for reconsideration pursuant to Federal Rule of Civil Procedure 59(e), *see City of Harper Woods Employees' Retirement Sys. v. Olver*, 589 F.3d 1292, 1304 (D.C. Cir. 2009), and on appeal she has not identified any alleged facts to cure the deficiencies in her complaint.  Under the circumstances,  Rollins's claims against the pharmaceutical companies were properly dismissed with prejudice.

Accordingly, we affirm the order dismissing the complaint.

KAVANAUGH, *Circuit Judge*, concurring: I join the Court's thorough opinion and add one observation about the state of this Circuit's law on dismissals under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

As the Court correctly explains, when a district court grants a Rule 12(b)(6) motion to dismiss for failure to state a claim, that dismissal "operates as an adjudication on the merits" under Rule 41(b) "[u]nless the dismissal order states otherwise." And "an adjudication on the merits" is synonymous with a dismissal with prejudice. *See Semtek International Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505 (2001). Therefore, a district court order that dismisses a case under Rule 12(b)(6) without stating whether it is with or without prejudice operates as a dismissal with prejudice.

In this case, the District Court's dismissal order did not state whether it was with or without prejudice. Under Rule 41(b), we thus must construe the order as a dismissal with prejudice.

That in turn raises the question of when a dismissal with prejudice under Rule 12(b)(6) is permissible. Rule 41(b) also answers that question. By providing that Rule 12(b)(6) dismissals are with prejudice unless the district court in its discretion states otherwise, Rule 41(b) indicates that Rule 12(b)(6) dismissals are typically with prejudice and do not require particular justification by the district court. *See Okusami v. Psychiatric Institute of Washington, Inc.*, 959 F.2d 1062, 1066 (D.C. Cir. 1992) (Rule 12(b)(6) dismissal for failure to state a claim "is a resolution on the merits and is ordinarily prejudicial"). That conclusion is buttressed by Rule 41(b)'s proviso that dismissals on certain other grounds – lack of jurisdiction, improper venue, and failure to join a required party – are without prejudice.

Any potential unfairness that could otherwise result from this procedural framework is addressed by the Rules in two ways. First, Rule 15(a) provides that if a defendant files a motion to dismiss under Rule 12(b)(6) for failure to state a claim, the plaintiff may amend the complaint as a matter of

course within 21 days of service of the motion to dismiss. That aspect of Rule 15(a) ensures, among other things, that the plaintiff has an opportunity to amend a complaint so as to avoid dismissal based on a technicality or readily corrected error that the defendant has identified. Moreover, under Rule 15(a), a district court in its discretion also may grant leave for a plaintiff to amend a complaint even outside the time period for amending as a matter of course. Second, under Rules 41(b) and 12(b)(6), a district court has discretion to dismiss a complaint without prejudice when the district court concludes that the circumstances so warrant. In short, Rules 12(b)(6), 15, and 41(b) work in tandem to establish a fair and efficient process for civil plaintiffs and defendants alike.

But as District Judge Bates has perceptively noted, this Court's case law on Rule 12(b)(6) dismissals is not fully aligned with the Rules. *See In re Interbank Funding Corp. Securities Litigation*, 432 F. Supp. 2d 51, 54-55 & n.4 (D.D.C. 2006). Some of this Court's cases, without citing Rule 41(b), have suggested that Rule 12(b)(6) dismissals with prejudice are disfavored. Those decisions have imposed a "high" bar for Rule 12(b)(6) dismissals with prejudice. *See, e.g.*, *Belizan v. Hershon*, 434 F.3d 579, 583-84 (D.C. Cir. 2006). By their terms, however, it is not evident that the Rules impose such a constraint on the discretion of district courts in issuing Rule 12(b)(6) dismissals. On the contrary, Rule 41(b) contemplates that a Rule 12(b)(6) dismissal ordinarily operates as a dismissal with prejudice, unless the district court in its discretion states otherwise.

In any event, I join the Court's opinion here, which correctly resolves and analyzes this case under our existing precedents.