ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -                                          )
                                                     )
Mindseeker, Inc.                                     )      ASBCA No. 63197
                                                     )
Under Contract No. W81K04-18-D-0002     )

APPEARANCES FOR THE APPELLANT:          Stephanie D. Wilson, Esq.
                                        Rachael C. Haley, Esq.
                                        Charles L. Bonani, Esq.
                                          Berenzweig Leonard, LLP
                                          McLean, VA


APPEARANCES FOR THE GOVERNMENT:         Dana J. Chase, Esq.
                                          Army Chief Trial Attorney
                                        MAJ Heather M. Martin, JA
                                        MAJ Joshua B. Fix, JA
                                        MAJ Harry M. Parent III, JA
                                          Trial Attorneys


OPINION BY ADMINISTRATIVE JUDGE HERZFELD
ON THE GOVERNMENT'S MOTIONS

The Department of the Army moves to dismiss Mindseeker, Inc.'s
(Mindseeker), appeal for lack of jurisdiction due to (1) Mindseeker's alleged failure to
convert its request for equitable adjustment (REA) into a Contract Disputes Act (CDA)
claim and (2) its alleged failure to present the complaint's breach allegation regarding
the covenant of good faith and fair dealing to the contracting officer. We grant the
motion in part and deny the motion in part.

STATEMENT OF FACTS FOR PURPOSES OF THE MOTIONS

On January 5, 2018, the U.S. Army Health Contracting Activity (Army) and
Mindseeker entered a contract (Contract) for Mindseeker to provide medical coding
services to the United States Medical Command using the government-provided
browser-based Application Virtualization Hosting Environment (AVHE) (R4, tab 1
at 1, 4, 40).

On November 18, 2019, Mindseeker submitted a "Request for Price
Modification" seeking costs for (1) recovery of health and welfare increases mandated
by the government under the Service Contract Act, (2) lost production due to the
government-imposed downtime for the AVHE system, (3) recovery of wage

determination increases mandated by the government under the Service Contract Act, and (4) a price increase per coded record (R4, tab 2 at 68). The request concluded: "Mindseeker appreciates the opportunity to present our concerns and requests for the Government to consider. We are ready, willing, and able to meet with you at your request and convenience to discuss one or all of the contents of the letter" (*id.* at 75).

On February 21, 2020, the Army's contract specialist requested that Mindseeker provide additional information to "validate your numbers" for the downtime request (app. supp. R4, tab 63 at 203). On February 26, 2020, Mindseeker provided additional information for 11 months regarding the downtime request (app. supp. R4, tab 63 at 201).

On July 10, 2020, Mindseeker submitted a revised request for price modification, labeling it a "Request for Equitable Adjustment" (R4, tab 5 at 95). Mindseeker acknowledged that Mindseeker and the Army had resolved the two price modifications for costs related to health and welfare increases and wage determination increases required by the Service Contract Act (*id.* at 95). Mindseeker still sought payment for government-imposed downtime for the AVHE system and a price increase for each coded record (*id.*). Mindseeker included additional monthly data to support its request for payment for the government downtime, including requesting "an Equitable Adjustment of $615,199, for this unexpected loss" (*id.* at 98, 102-16). Mindseeker also provided additional information to support its price increase for the coded records, including requesting the Army either (A) provide a per unit price increase from $2.90 to $3.90 or (B) include a new contract line item number to pay for systems downtime hours "greater than 0.4%" per fiscal year with an hourly rate of $44.95 (*id.* at 99-101). Similar to its request for a price modification, the "REA" concluded: "Mindseeker appreciates the opportunity to present our concerns and requests for the Government to consider. We are ready, willing, and able to meet with you at your request and convenience to discuss the requests presented herewith" (*id.* at 101).

Mindseeker's president continued to communicate with the Army's contract specialist and updated the "REA," particularly providing information for additional months of downtime losses and increasing the amount for equitable adjustment to $677,614 (app. supp. R4, tabs 107-08). In November 2020, Mindseeker's president asked the Army's contract specialist for "an estimated date that this will be resolved" (app. supp. R4, tab 104 at 527). The Army contract specialist responded that, "I'm hopeful we can have this resolved within the next 60 days" (*id.*).

On December 9, 2020, the Army's contract specialist asked that Mindseeker "include the verbiage below" on a revised letter and sign it:

> I certify that the claim is made in good faith; that the
> supporting data are accurate and complete to the best of
> my knowledge and belief; that the amount requested
> accurately reflects the contract adjustment for which the
> contractor believes the Governmnet [sic] is liable; and I am
> duly authorized to certify the claim on behalf of the
> contractor.

(App. supp. R4, tab 109 at 554).  Notably, the Contract incorporated by reference both the Disputes clause and the Requests for Equitable Adjustment clause (R4, tab 1 at 10, 12) (incorporating by reference Federal Acquisition Regulation (FAR) 52.212-4(d) (JAN 2017), which in turn incorporates FAR 52.233-1 – Disputes; and Defense Federal Acquisition Regulation Supplement (DFARS) 252.243-7002(b)).  The certification language requested by the Army contract specialist matches the language for certification of a claim under the Disputes clause.  (*Compare* app. supp. R4, tab 109 at 554 *with* FAR 52.233-1(d)(2)(iii)).  The Army contract specialist also added up Mindseeker's proposed downtime losses and "came up with $677,616.00 versus $677,614.00" (app. supp. R4, tab 109 at 554).

Later that day, on December 9, 2020, Mindseeker's president responded and acknowledged that the Army contract specialist's calculation was correct (app. supp. R4, tab 110 at 557).  Mindseeker's president attached a revised "request for equitable adjustment" with the corrected dollar amount and the certification:

> I certify that the claim is made in good faith; that the
> supporting data are accurate and complete to the best of
> my knowledge and belief; that the amount requested
> accurately reflects the contract adjustment for which the
> contractor believes the Government is liable; and I am duly
> authorized to certify the claim on behalf of the contractor.

(App. supp. R4, tab 110 at 557; R4, tab 6 at 121, 124).  As it had previously, Mindseeker closed the letter:  "Mindseeker appreciates the opportunity to present our concerns and requests for the Government to consider.  We are ready, willing, and able to meet with you at your request and convenience to discuss the requests presented herewith" (R4, tab 6 at 124).

On August 25, 2021, the Army's contract specialist requested that Mindseeker's president submit a revised "document" including the costs of downtime losses from December 2020 (when Mindseeker last submitted a revised REA with claim certification) through "the present" (app. supp. R4, tab 134 at 681).  On August 26, 2021, Mindseeker responded to the request by submitting a revised document updating its downtime losses through July 2021, which now totaled $924,384 (R4, tab 13

at 204).  As it previously had done, Mindseeker continued to call the document an REA, minimally revised the text (continuing to include the same closing), and again included the claim certification language from the Disputes clause (R4, tab 13 at 199, 207).

On September 16, 2021, Mindseeker's president followed up with the Army's contract specialist "respectfully requesting an update" regarding the REA, recounting that the contract specialist had previously stated he needed to "first draft the mod[ification] and then present to" the contracting officer (app. supp. R4, tab 141 at 720).  The Army's contract specialist responded the same day, stating that "the Contracting Officer's Decision document is just about complete," and he intended to provide it to the contracting officer the following day (app. supp. R4, tab 114 at 719).

On October 15, 2021, Mindseeker's president emailed the Army's contract specialist to "see if you have a status update on the Contracting Officer's Decision Document" (app. supp. R4, tab 146 at 741).  On October 19, 2021, after the two talked, Mindseeker's president followed up by asking the contract specialist to nudge the contracting officer to have agency counsel "render a timely decision" (app. supp. R4, tab 145 at 737).  On October 22, 2021, the contract specialist responded that agency attorneys were reviewing the decision and expected to complete that review by Thursday of the following week (app. supp. R4, tab 146 at 740).

In November 2021, a different Army contracting officer – the branch chief – assumed responsibilities for this Contract (gov't mot., ex. G-1 – Smith declaration ¶ 4).  On January 6, 2022, Mindseeker's president emailed the cognizant contracting office seeking to talk with someone about the "outstanding REA" (R4, tab 17 at 232).  The Army branch chief spoke with Mindseeker's president, who "expressed concern over the fact that the Government has not yet rendered a decision" and indicated Mindseeker had a meeting with their congressional representative the following week (*id.* at 230).  They discussed "that there is not a firm deadline associated with the REA," and the branch chief felt that Mindseeker's president understood "that it would not be the case if converted to a claim" (*id.* at 230; gov't mot., ex. G-1 – Smith declaration ¶¶ 11-12).

On January 24, 2022, the branch chief issued a decision denying Mindseeker's "REA" (R4, tab 18 at 240).  The Army's branch chief prefaced his decision by characterizing how he viewed Mindseeker's submission:

> Although Mindseeker's 26 August updated/revised REA
> included a Contract Disputes Act certification (see, e.g.,
> 41 U.S.C. § 7103(b)(1); FAR 52.233-1(d)(2)(iii)), the
> language and tenor of that document, as well as other
> contemporaneous communications between Mindseeker

4

and the Government at the time that the updated/revised REA was submitted, indicate that the 26 August updated/revised REA is in fact a 'request for equitable adjustment' rather than a 'claim' submitted pursuant to the subject contract's Disputes clause, FAR 52.233-1, DISPUTES (MAY 2014).

(R4, tab 18 at 233). Instead, the branch chief asserted that the August 26, 2021 revised REA "satisfies the requirement for a contractor submitting an REA in excess of the simplified acquisition threshold to certify that the request is made in good faith and that supporting data are accurate and complete to the best of the certifier's knowledge and belief" (*id.* at 233).

Substantively, the Army's branch chief denied Mindseeker's request asserting that Mindseeker failed to "establish that performance disruptions *actually occurred*; that such performance disruptions, if they occurred, *resulted exclusively from AVHE System downtime* and that they were *solely attributable to the Government*" (*id.* at 239 (emphasis in original)). The Army concluded that Mindseeker's claimed lost production was "speculative" and it had failed to include sufficient "supporting evidence to substantiate its actual performance" (*id.*). The Army denied the equitable adjustment of $924,384 for the alleged government downtime disruptions (*id.*). The Army also denied Mindseeker's request for a price increase per coded record, explaining that the Contract included a firm fixed-price contract line item for that payment and Mindseeker bore the risk of any foreseeable changes (*id.* at 239-40).

On February 16, 2022, Mindseeker appealed to the Board. In addition to appealing its submitted claim, Mindseeker's complaint also asserted: "[A]s no remedial action was taken to address the defective AVHE uptime stated in the Contract's PWS Paragraph 1.5.1.1, the government's failure to act in good faith when considering Mindseeker's REA was a breach of contract" (compl. ¶ 8; amend. compl. ¶ 8).

## DECISION

The Army asserts that Mindseeker failed to convert its REA to a CDA claim by failing to request a sum certain for part of its claim and failing to request a contracting officer's final decision for the entire claim. We disagree, in part. Mindseeker properly requested a contracting officer's decision for its claim for downtime losses but failed to make a demand as a matter of right and failed to assert a sum certain for its request for a new contract line item to pay it an increased rate for each coded record or an hourly rate for future downtime losses. The Army also asserts that Mindseeker raised a breach of the covenant of good faith and fair dealing in its complaint that the

5

contractor failed to present to the contracting officer. Mindseeker did not address this assertion in its briefs.

## I.     *Standard of Review*

Mindseeker, as the proponent of the Board's jurisdiction, bears the burden of establishing jurisdiction by a preponderance of the evidence. *Najmaa Alshimal Co.*, ASBCA No. 62701, 21-1 BCA ¶ 37,872 at 183,899. We rely on the record for fact-finding when evaluating whether jurisdiction exists. *Kellogg Brown & Root Servs., Inc.*, ASBCA No. 62681 *et al.*, 22-1 BCA ¶ 37,974 at 184,426.

Though the Board's rules have no equivalent to FED. R. CIV. P. 12(B)(6) or 12(c), "we permit motions to dismiss for failure to state a claim upon which relief may be granted." *Fluor Intercontinental, Inc.*, ASBCA No. 62550, 22-1 BCA ¶ 38,105 at 185,095. We assess whether a complaint and claim contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "We are not limited to the four-corners of the complaint, but look also to the contractor's or government's claim – the wellspring of our jurisdiction" and may review "'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned,' as appropriate." *Fluor*, 22-1 BCA ¶ 38,105 at 185,096 (quoting 5B CHARLES A. WRIGHT & ARTHUR R. MILLER, FED. PRAC. & PROC. CIV. § 1357 (3d ed.)).

## II     *Mindseeker Converted its REA into a Claim for its Downtime Losses but not for its Proposed Modification for Future Hourly Increases*

The Federal Circuit has pointed to three objective criteria to assess whether a submission is a claim rather than a routine request or an REA: (1) the submission must meet the definition of a "claim" as defined by the Disputes clause in a contract (and FAR); (2) the submission includes a CDA certification (or some type of sworn statement that can be perfected into a CDA certification); and (3) the contractor must request a final decision from the contracting officer. *Zafer Constr. Co. v. United States*, 40 F.4th 1365, 1367-68 (Fed. Cir. 2022). "To determine whether a contractor has submitted a CDA claim, we apply a common sense analysis, looking at specific communications on a case-by-case basis and the 'totality of the correspondence between the parties.'" *Najmaa*, 21-1 BCA ¶ 37,872 at 183,899 (quoting *CCIE & Co.*, ASBCA Nos. 58355, 59008, 14-1 BCA ¶ 35,700 at 174,816). Mindseeker's submissions for downtime losses (although not its request for a unit price increase) meet these criteria. Thus, as discussed below, Mindseeker submitted a claim for

downtime losses and properly appealed a contracting officer's final decision on that claim.

> A. *Mindseeker's Downtime Losses Met the Definition of a Claim, But its Request to Add a Line Item for Future Losses Did Not*

Mindseeker's submissions regarding its downtime losses meet the definition of a "claim." The Contract's Disputes clause includes the FAR definition of a claim: "[A] written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to this contract." FAR 52.233-1(c) (incorporated by reference in the Contract, R4, tab 1 at 10 (incorporating by reference FAR 52.212-4(d)); *see also* FAR 2.101 (same definition of claim). The FAR definition of a claim governs the use of the term under the CDA. *Zafer*, 40 F.4th at 1367 (citing *Todd Constr., L.P. v. United States*, 656 F.3d 1306, 1311 (Fed. Cir. 2011)). A CDA claim need not take "'any particular form or use any particular wording,' . . . so long as it has 'a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim.'" *Hejran Hejrat Co. v. United States Army Corps of Eng'rs*, 930 F.3d 1354, 1357 (Fed. Cir. 2019) (quoting *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327 (Fed. Cir. 2010) and *Contract Cleaning Maint., Inc. v. United States*, 811 F.2d 586, 592 (Fed. Cir. 1987)).

A contractor can meet the requirement of a "written demand or written assertion" regarding the basis of the claim by submitting a document that provides "detailed factual bases for its alleged losses . . . ." *Hejran Hejrat*, 930 F.3d at 1357-58. The Army asserts that Mindseeker's written submissions cannot meet the definition of a claim because the contractor labeled these documents "REAs" (gov't supp. br. at 6; gov't reply br. at 6). However, even if labeled an "REA" and subjectively treated as an "REA" by the parties, the request may still constitute a claim. *Hejran Hejrat*, 930 F.3d at 1357 (concluding that a request labeled as an "REA" constituted a claim); *Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1578 (Fed. Cir. 1995) (en banc) (concluding REA constituted a claim because the "REA satisfies all the requirements listed for a CDA 'claim' according to the plain language" of the FAR's definition of a claim).

Here, nearly every filing (whether labeled a "request for price modification" or an "REA") included a clear and unequivocal statement explaining the basis of Mindseeker's downtime losses claim for each month and for its request to modify the Contract to increase the price per unit for coded records (R4, tabs 2, 4-6, 13; app. supp. R4, tab 110). Mindseeker provided documentation to support its request to recover alleged costs for downtime losses (R4, tabs 5-6). On several occasions, the Army asked Mindseeker to update the calculation of its downtime losses and include similar supporting documentation for the additional months of downtime losses (app. supp.

R4, tabs 63, 107, 134).  Thus, Mindseeker made a written demand or written assertion as required to meet the definition of a claim.

Next, we turn to whether the submissions adequately explained the amount of the claim, which requires assessing whether the contractor has included a sum certain in its submission.  *Zafer*, 40 F.4th at 1369 (assessing whether a contractor provided "detailed factual bases for its alleged losses, and a sum certain based on those losses" (quoting *Hejran Hejrat*, 940 F.3d at 1357-58)); *Najmaa*, 21-1 BCA ¶ 37,872 at 183,899 ("To provide notice for the amount of any monetary claim, the contractor must provide a sum certain in its written communication to the contracting officer.") (citing *Sweet Star Logistic Serv.*, ASBCA No. 62082, 20-1 BCA ¶ 37,704 at 183,046). Although subject to dismissal for failure to state a claim rather than lack of jurisdiction, "the need to state a sum certain in submitting a claim under the CDA is a mandatory rule provided for in the FAR."  *ECC Int'l Constructors, LLC v. Sec'y of Army*, 79 F.4th 1364, 1370 (Fed. Cir. 2023).

Mindseeker's submissions included a sum certain for the downtime losses portion of its claim, clearly asserting losses that increased as additional months passed from $615,199 to $677,614 to $924,384 (R4, tab 5 at 98, tab 13 at 204; app. supp. R4, tabs 107-08).  Indeed, the Army understood this sum certain so thoroughly that the Army's contract specialist even corrected a calculation error in one of Mindseeker's submissions and requested that Mindseeker re-submit with the corrected dollar amount (app. supp. R4, tab 109 at 554).

On the other hand, Mindseeker's request to modify the contract to increase the price per unit for each coded record or, alternatively, to add a new line item to reimburse Mindseeker for each hour of future downtime suffers from two problems. First, because Mindseeker seeks a modification relating to a future monetary payment, it has not made a "demand for something due or believed to be due" to meet the FAR's requirement to demand money as a "matter of right."  *Lockheed Martin Aeronautics Co. v. Sec'y of Air Force*, 66 F.4th 1329, 1335-36 (Fed. Cir. 2023) (internal citation omitted).

Second, Mindseeker's request for an increased unit price does not satisfy the sum certain requirement because Mindseeker's submission fails to quantify the number of units (without which we cannot apply a mathematical calculation to derive a total sum).  *Strobe Data, Inc.*, ASBCA No. 60123, 16-1 BCA ¶ 36,214 at 176,694-95 (concluding that a submission seeking costs as "profit per unit" failed to state a sum certain because it included an "uncertain" number of units); *Howell Tool & Fabricating, Inc.*, ASBCA No. 47630, 95-1 BCA ¶ 27,474 at 136,866 ("Appellant's 14 December 1993 letter contained a request for a price increase of $21.18 per unit, but it is not clear for how many units appellant seeks the price increase; lacking that

8

information, the request for compensation was not for a sum certain and was, therefore, not a claim.").[1]

Ultimately, we conclude that Mindseeker has shown that its submissions meet the FAR definition of a "claim" regarding its downtime losses. But, Mindseeker has failed to show its unit price request for future monetary payments meets the FAR definition of a "claim" because Mindseeker failed to make the demand as a matter of right and failed to include a sum certain. We dismiss this component of its claim without prejudice to Mindseeker submitting a new claim and appealing it, even though the failure to show a sum certain constitutes a failure to state a claim upon which relief may be granted. *ECC Int'l*, 79 F.4th at 1380 ("A claim that does not state a sum certain has not sufficiently pleaded the elements of a claim under the CDA and may be denied by the contracting officer and dismissed on appeal to the boards or Court of Federal Claims for failure to state a claim."). The Federal Circuit anticipated that a contractor would have the opportunity "to timely revise and refile its claim to specify the sum certain" after a board or court dismisses for failure to state a claim. *ECC Int'l*, 79 F.4th at 1370. While dismissal for failure to state a claim usually (but not always) results in dismissal with prejudice, here "dismissal without prejudice" best meets the Federal Circuit's intent because it results in "dismissal without barring the plaintiff from returning later, to the same court, with the same underlying claim." *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505 (2001); *cf. also Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 132-33 (D.C. Cir. 2012) (stating that FED. R. CIV. P. 41(b) gives a district court "discretion to dismiss a complaint without prejudice when the district court concludes that the circumstances so warrant" even when dismissal involves failure to state a claim under 12(b)(6)) (Kavanaugh, J. concurring).[2]

---

[1] Notably, Mindseeker did not assert before the contracting officer or argue before the Board that it was seeking a non-monetary remedy of reforming the Contract through a modification for future costs, which would have met the requirement to make a demand "as a matter of right." *See Alliant Techsys., Inc. v. United States*, 178 F.3d 1260, 1265 (Fed. Cir. 1999) (noting that contractor made a demand "as a matter of right" by asserting "specific contractual and legal grounds for its interpretation" of a contract option). Mindseeker also would not have needed to meet the sum certain requirement. *See Ebasco Envtl.*, ASBCA No. 44547, 93-3 BCA ¶ 26,220 at 130,490 ("It does not include the amount of the claim, but it was not necessary to do so since appellant seeks the adjustment of contract terms to correct a mistake rather than monetary relief."); FAR 33.205(b) ("A contractor's allegation that it is entitled to rescission or reformation of its contract in order to correct or mitigate the effect of a mistake shall be treated as a claim under the Disputes statute.").

[2] The Federal Circuit also raised the specter of forfeiture if the government fails to timely challenge the absence of a sum certain. *ECC Int'l*, 79 F.4th at 1380.

B.     *Mindseeker Certified its Claim under the CDA and Disputes Clause*

Starting with its December 7, 2020 submission, Mindseeker certified its claim, including a statement with the four required elements to certify a claim under the CDA and the Contract's Disputes clause.  *Compare* R4, tab 6 at 124, *with* FAR 52.233-1(d)(2)(iii), *and* 41 U.S.C. §§ 7103(b)(1)(A)-(D); *see also Zafer*, 40 F.4th at 1367 (discussing the statute).  Consistent with the CDA certification requirement, Mindseeker's certification states that the signatory certifies "that the *claim* is made in good faith" and has the authority "to certify the *claim* on behalf of the contractor." (R4, tab 6 at 124) (emphasis added); FAR 52.233-1(d)(2)(iii) (emphasis added); 41 U.S.C. §§ 7103(b)(1)(A), (D) (emphasis added).  When Mindseeker amended its submission in August 2021, it again included the same signed certification for CDA claims (R4, tab 13 at 207).  Thus, Mindseeker properly certified its claim pursuant to the CDA and the Disputes clause.

C.     *Mindseeker Requested a Final Decision*

The request requirement "focuses on whether, objectively, the document's content and the context surrounding the document's submission put the contracting officer on notice that the document is a claim requesting a final decision."  *Zafer*, 40 F.4th at 1368.  "[A] contractor's submission may merely imply a request for a contracting officer decision without explicitly doing so."  *BAE Sys. Ordnance Sys., Inc.*, ASBCA No. 62416, 21-1 BCA ¶ 37,800 at 183,577.  Whether explicit or implicit, a submission need not use any "magic words" to make a request for a contracting officer's final decision.  *Hejran Hejrat*, 930 F.3d at 1357.

Here, the content and context of the correspondence between the Army and Mindseeker show that Mindseeker requested a final decision for a CDA claim.  Mindseeker's submissions started as an REA, but that changed when Mindseeker certified its submission beginning in December 2020 and again certified the amended submission in August 2021 (R4, tab 6 at 124, tab 13 at 207).  Previously, the Army had provided some price adjustments after negotiations of the REA for the two Service Contract Act issues prior to August 2020 (R4, tab 5 at 95).  But, the Army provided no relief on the two issues that Mindseeker later certified, which remain in dispute in this appeal.

After Mindseeker inquired when its REA on these two remaining issues would be resolved, the Army contract specialist indicated that it would be resolved in 60 days – the time for issuance of a contracting officer's final decision under the CDA (app.

Here, however, the Army moved to dismiss at the beginning of this appeal on the same day its initial responsive pleading was due.

10

supp. R4, tab 104 at 527); 41 U.S.C. § 7103(f)(2). Next, the Army's contract specialist asked Mindseeker to submit a CDA certification with its updated claim in December 2020, further signaling a change in how these issues would be treated (app. supp. R4, tab 109 at 554). In response, Mindseeker included a CDA certification that "satisfies all of the certification requirements for a claim, which go beyond what is required for a mere request for equitable adjustment." *Zafer*, 40 F.4th at 1369; *JAAAT Tech. Servs.*, ASBCA No. 61792 *et al.*, 21-1 BCA ¶ 37,878 at 183,953 ("An REA can be converted into a claim by the addition of a CDA certification . . . ."). The Federal Circuit has credited a certification as a key fact serving to imply a request for a final decision because it can show, as it did here, a "formality lacking in the earlier submissions." *Hejran Hejrat*, 930 F.3d at 1358 (crediting an REA certification as evidence of a request for a contractor's final decision); *Zafer*, 40 F.4th at 1369 (crediting CDA certification). Indeed, "[c]ertification plays a serious role in the statutory scheme because it triggers a contractor's potential liability for a fraudulent claim . . . [and is] designed to discourage the submission of unwarranted contractor claims and to encourage settlement." *Hejran Hejrat*, 930 F.3d at 1358 (quoting *Skelly & Loy v. United States*, 685 F.2d 414, 418 n.11 (Ct. Cl. 1982)).

Moreover, if there was any doubt that Mindseeker had implicitly requested a decision, it remedied any ambiguity by explicitly requesting a decision in correspondence with the Army. After amending its submission in August 2021, Mindseeker inquired with the Army contract specialist to request an update regarding its submission (app. supp. R4, tab 141 at 720). The Army's contract specialist responded the same day, stating that "the Contracting Officer's Decision document is just about complete" (app. supp. R4, tab 141 at 719). Several weeks later, Mindseeker sought a status update regarding the "Contracting Officer's Decision Document" (app. supp. R4, tab 146 at 741). And, then after the Army contract specialist spoke with Mindseeker's president and explained it was subject to legal review, Mindseeker asked the contract specialist to nudge the contracting officer to have agency counsel "render a timely decision" (app. supp. R4, tab 145 at 737). The Federal Circuit has greeted far more ambiguous contractor statements as sufficient to show an express request for a final decision. *James M. Ellett Constr. Co. v. United States*, 93 F.3d 1537, 1544 (Fed. Cir. 1996) ("After ten months of fruitless negotiations, Ellett explicitly requested that the contracting officer settle its claim. This demand is tantamount to an express request for a contracting officer's decision.").

The Army says we should discount the CDA certification as proof of a request for a final decision because the Army contract specialist requested Mindseeker to add the CDA certification to its submission (gov't reply br. at 3). The Army then contends that Mindseeker never placed the Army on notice that it had converted its REA to a claim (gov't supp. br. at 6; gov't supp. reply br. at 3-5). We disagree. The Army placed itself on notice that Mindseeker was converting its REA to a CDA claim by

requesting that Mindseeker certify its REA using the CDA certification, which goes beyond an REA's certification. *Zafer*, 40 F.4th at 1367.

The Army also asserts that Mindseeker understood it was submitting an REA, not a CDA claim, based on a conversation between Mindseeker's president and the Army's branch chief more than a year after Mindseeker certified its claim and months after explicitly asking for a decision (gov't supp. br. at 8; gov't supp. reply br. at 3-5). The Army claims that Mindseeker engaged in gamesmanship, even employing a "Jedi mind trick" to assert that the REA had been a claim that permitted this appeal (gov't supp. br. at 10-13; gov't supp. reply br. at 6-8). The Federal Circuit has recognized that the overlap between an REA and CDA claim "might create room for gamesmanship" and a contracting officer might communicate whether the agency would issue a final decision or require the contractor to propose additional settlement terms to negotiate an REA. *Zafer*, 40 F.4th at 1371. However, "[t]he contracting officer could not retroactively turn a qualifying claim document into something else." *Hejran Hejrat*, 930 F.3d at 1358. Even while acknowledging the possibility of contractor gamesmanship, the Federal Circuit reiterated that "[r]equirements 'that allow [ ] the government to unilaterally designate when a submission becomes a claim' disrupt[ ] the balance of power between the government and contractors that the CDA sought to establish.'" *Zafer*, 40 F.4th at 1370 (quoting *Reflectone*, 60 F.3d at 1582).

Moreover, if any party engaged in gamesmanship, it was the Army, not Mindseeker. Notably, the branch chief became the cognizant contracting officer for Mindseeker's REA almost a year after Mindseeker's submissions added the CDA certification (gov't mot., ex. G-1 – Smith declaration ¶ 4). If the branch chief treated Mindseeker's submission as a claim, that meant interest began running over 13 months prior to the Army rendering a decision on the claim. 41 U.S.C. § 7109(a)(1) ("Interest on an amount found due a contractor on a claim shall be paid to the contractor for the period beginning with the date the contracting officer receives the contractor's claim . . . ."); *Zafer*, 40 F.4th at 1370-71. The branch chief's decision engaged in some interpretive gymnastics by acknowledging that Mindseeker's "REA included a Contract Disputes Act certification" but that "the language and tenor of that document, as well as other contemporaneous communications" indicated it should be treated as an REA, not a claim (R4, tab 18 at 233). The branch chief's analysis nearly turns the DFARS on its head because, typically, a CDA certification displaces an REA certification (not the other way around). DFARS 243.204-71(c) ("If the contractor has certified a request for equitable adjustment in accordance with 10 U.S.C. 3862(a), and desires to convert the request to a claim under the Contract Disputes statute, the contractor shall certify the claim in accordance with FAR subpart 33.2.").

The Army also asserts that the REA could not be a claim because each submission ended with language that appeared to seek settlement rather than demand a decision (gov't mot. at 4-5; gov't reply br. at 4). In each REA, before and after

12

certification, Mindseeker stated it was "ready, willing, and able to meet with you at your request and convenience to discuss" the requests in each submission (R4, tab 2 at 75, tab 5 at 101, tab 6 at 124, tab 13 at 207). However, hortatory language seeking settlement does not signify that the submission is an REA rather than a claim. As the Federal Circuit has repeatedly stated, "'[t]here is no necessary inconsistency between' a claim and 'an expressed desire to continue to mutually work toward a claim's resolution.'" *Zafer*, 40 F.4th at 1370 (quoting *Reflectone*, 60 F.3d at 1583). Thus, Mindseeker's willingness to meet and discuss its claim with the Army does not negate that Mindseeker converted its REA to a claim.

Finally, the Army asserts that its decision does not qualify as a "final decision" because the decision lacks the required notice of appeal rights to the contractor, and Mindseeker failed to advise the Army of this deficiency (gov't supp. br. at 4-5, 8, 11). The CDA requires that a contracting officer's final decision must provide a contractor with notice of its right to appeal to a board or file suit at the U.S. Court of Federal Claims. 41 U.S.C. § 7103(e) ("The contracting officer's decision shall state the reasons for the decision reached and shall inform the contractor of the contractor's rights as provided in this chapter."); FAR 33.211(a)(4)(v). However, the CDA requires the contracting officer to include these appeal rights for the "protection of the contractor," not the government. *Decker & Co v. West*, 76 F.3d 1573, 1579 (Fed. Cir. 1996); *Kellogg*, 22-1 BCA ¶ 37,974 at 184,429. No harm arises where a contractor does not detrimentally rely on an agency's failure to include the required CDA appeal rights in a contracting officer's final decision. *Fla. Dep't of Ins. v. United States*, 81 F.3d 1093, 1098 (Fed. Cir. 1996); *Kellogg*, 22-1 BCA ¶ 37,974 at 184,429. Mindseeker timely appealed the contracting officer's final decision despite the agency's failure to provide a notice of appeal rights. Thus, "the failure to include appeal rights, will not render the otherwise valid final decision into an invalid decision." *JAAAT*, 21-1 BCA ¶ 37,878 at 183,951.

III.    *Mindseeker Abandoned Its Breach of Good Faith and Fair Dealing Allegation*

In its complaint, Mindseeker alleges: "[A]s no remedial action was taken to address the defective AVHE uptime stated in the Contract's PWS Paragraph 1.5.1.1, the government's failure to act in good faith when considering Mindseeker's REA was a breach of contract" (compl. ¶ 8; amend. compl. ¶ 8). The Army asserts that Mindseeker failed to present this allegation to the contracting officer and, thus, the Board lacks jurisdiction to hear this allegation (gov't mot. at 8; gov't reply br. at 6-8); 41 U.S.C. § 7103(a)(1) ("Each claim by a contractor against the Federal Government relating to a contract shall be submitted to the contracting officer for a decision."); *Anthony & Gordon Constr. Co.*, ASBCA No. 61916, 21-1 BCA ¶ 37,887 at 184,001. Mindseeker has not responded to the Army's argument. Given Mindseeker's complete failure to defend its breach allegation, "we consider this issue to have been

13

abandoned." *Cellular Materials Int'l, Inc.*, ASBCA No. 61408, 22-1 BCA ¶ 38,022 at 184,645.  Thus, we strike this breach allegation from the complaint.

<u>CONCLUSION</u>

For the foregoing reasons, we deny the Army's motion to dismiss the downtime losses portion of Mindseeker's claim because Mindseeker converted that portion of its REA to a claim.  We dismiss, without prejudice, the portion of Mindseeker's claim seeking a modification to increase the per unit price per coded record or include a new contract line item for future system downtime hours.  Finally, we strike Mindseeker's assertion of a breach of the duty of good faith and fair dealing from the complaint.

Dated:  August 29, 2024

DANIEL S. HERZFELD
Administrative Judge
Armed Services Board
of Contract Appeals

I <u>concur</u>

OWEN C. WILSON
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I <u>concur</u>

MICHAEL N. O'CONNELL
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 63197, Appeal of Mindseeker, Inc., rendered in conformance with the Board's Charter.

Dated: August 29, 2024

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

15